CONNECTICUT HEALTH FACILITIES, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF STAMFORD (10651)

O'CONNELL, LAVERY and CRETELLA, Js.

Argued June 8—decision released September 8, 1992

*James V. Minor,* assistant corporation counsel, with whom, on the brief, were *Daniel M. McCabe,* corpora-

1

tion counsel, and *Paul D. Shapero,* former corporation counsel, for the appellant (defendant).

*Michael J. Cacace,* with whom, on the brief, was *Paul T. Tusch,* for the appellees (plaintiffs).

LAVERY, J. This appeal arises from the denial by the Stamford zoning board of appeals (board) of the plaintiffs' application for a special exception to build a 120 bed nursing home and child day care center in a single family residential district. The trial court sustained the plaintiffs' appeal. On appeal to this court, the board claims that the trial court improperly (1) limited the discretion of the board over a special exception application, (2) overturned the board's denial based upon the criteria for special exceptions, (3) overturned the board's denial, which was based upon valid criticism by other agencies and evidence about the location of the project, and (4) ruled, sua sponte, that the Stamford zoning regulations were vague and unconstitutional, without the issue being raised in the plaintiffs' complaint or in the briefs. We agree that the trial court improperly sustained the plaintiffs' appeal and we reverse.

The pertinent facts are as follows. On October 31, 1989, the plaintiffs, Connecticut Health Facilities, Inc., and James A. Fieber, trustee, filed an application for a special exception to build a 120 bed nursing home and child day care center on a 14.416 acre parcel of land located in Stamford on the New Canaan border. The property is in a single family residence zone and had previously been approved for thirteen single family home building lots. An adjoining parcel of land owned by Fieber located in New Canaan had previously been approved for a sixteen lot subdivision. The whole property, located both in New Canaan and Stamford, was formerly a monastery.

The public hearing on the application was held on December 5, 1989. The plaintiffs presented expert witnesses who testified that there was a need for a nursing home in the area, that the project would minimally affect traffic, that local real estate values would not be adversely affected, that the design and location of the building on the property would minimize the impact and intrusion on the neighborhood, that there would be sufficient access and egress for emergency vehicles, that there were sufficient sewer and water facilities, and that the landscaping would blend into the neighborhood.

Because the Stamford planning commission was equally divided on the application, it did not make a recommendation. Members of the commission in favor of the application believed that the facility could be accommodated on the site, that it would not be detrimental to surrounding homes, and that it would have little impact on traffic. Members who opposed the facility believed that a land use of this character and intensity would dramatically change the character of the neighborhood. They also noted that there were no similar institutions in the neighborhood, that the neighborhood would not have expected such a change, and that the proposed use would be in conflict with the goal of the master plan, which is to prevent unwarranted intrusions into sound residential neighborhoods. The application was opposed by the southwestern regional planning agency, which cited the distance from the site to hospitals, traffic impact on both Stamford and New Canaan, the lack of proof as to a need for such a facility, and the failure of the plaintiffs to specify what use will be made of the nine acres of land which will not be used for the facility.

The application was likewise opposed by a large number of residents who voiced concerns over traffic, impact on the neighborhood, the need for the facility,

and its deviation from the master plan. One neighbor, a licensed nursing home administrator who was aware of the skilled nursing bed market in Stamford, testified there was no need for such a facility. A health care worker testified that the distance from the facility to area hospitals would be too far. Neighbors also testified as to the present adverse traffic conditions, the conditions of the road and the history of major accidents in the neighborhood. Others addressed the adverse effect on the neighborhood.

On March 21, 1990, the board denied the application, finding that (1) the location, size and scale of the proposed structure would be more objectionable to nearby properties than the public necessity demands, and (2) the nature and intensity of the proposed use in relation to its site and surrounding area would produce more potential disturbances to the health, safety or peaceful enjoyment of property than the public necessity demands.

The plaintiffs appealed to the Superior Court. The court sustained the appeal, and found that the plaintiffs had complied with all of the "ascertainable regulations and standards applicable to this appeal," and that the record failed to show that the plaintiffs violated any zoning regulation applicable to the application. The court further found, sua sponte, that certain Stamford zoning regulations (§ 19.3.2 [a] [1], [2], [3] and [4]) were unconstitutional as impermissibly vague. The defendant then appealed to this court.

The trial court rendered its judgment in an oral decision and later summarized its decision in a written memorandum of decision in response to a motion for articulation. The trial court found that the plaintiffs satisfied all ascertainable standards in the regulations, such as size, dimension setbacks, and the like, but that

the standards found in § 19.3.2 (a) (1), (2), (3) and (4) were unconstitutional as impermissibly vague.[1]

The plaintiffs failed to argue or brief the issues of vagueness and unconstitutionality of the standards at the trial court. Rather, the trial court raised them sua sponte. In *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* 222 Conn. 607, 620, 610 A.2d 1205 (1992), our Supreme Court stated, "[w]e have held that the burden of showing that regulations are unconstitutionally vague rests with the plaintiff. *Russo* v. *East Hartford,* 179 Conn. 250, 257, 425 A.2d 1282 (1979), cert. denied, 445 U.S. 940, 100 S. Ct. 1334, 63 L. Ed. 2d 773 (1980); see also *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d

[1] Section 19 of the Stamford zoning regulations, entitled "Variances and Special Exceptions" provides in pertinent part:

"3.2 Standards and Conditions.

"(a) Special Exceptions shall be granted by the reviewing board only upon a finding that the proposed use or structure or the proposed extension or alteration of an existing use or structure is in accord with the public convenience and welfare after taking into account, where appropriate:

"(1) the location and nature of the proposed site including its size and configuration, the proposed size, scale and arrangement of structures, drives and parking areas and the proximity of existing dwellings and other structures.

"(2) the nature and intensity of the proposed use in relation to its site and the surrounding area. Operations in connection with special exception uses shall not be injurious to the neighborhood, shall be in harmony with the general purpose and intent of these regulations, and shall not be more objectionable to nearby properties by reason of noise, fumes, vibration, artificial lighting or other potential disturbances to the health, safety or peaceful enjoyment of property than the public necessity demands.

"(3) the resulting traffic patterns, the adequacy of existing streets to accommodate the traffic associated with the proposed use, the adequacy of proposed off-street parking and loading, and the extent to which proposed driveways may cause a safety hazard, or traffic nuisance.

"(4) the nature of the surrounding area and the extent to which the proposed use or feature might impair its present and future development.

"(5) the Master Plan of the City of Stamford and all statements of the purpose and intent of these regulations."

678 (1973). Moreover, the plaintiff is required to show that the regulation complained of is impermissibly vague as applied to the facts of the particular case. *Bombero* v. *Planning & Zoning Commission,* 218 Conn. 737, 743, 591 A.2d 390 (1991); see also *Ghent* v. *Planning Commission,* [219 Conn. 511, 518, 594 A.2d 5 (1991)]. The plaintiff has not met these burdens in this appeal.''

In this case, the plaintiffs never alleged that the regulations were vague or unascertainable nor did they demonstrate that the regulations were vague as applied to the facts of this case. A zoning commission acts in an administrative capacity in its review of an application seeking a special permit use. *Sheridan* v. *Planning Board,* 159 Conn. 1, 16, 266 A.2d 396 (1969). Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process.

Conversely, when a zoning commission reviews a site plan, it is engaged in a ministerial process much like a review of a subdivision application. *Allied Plywood, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). In these instances, the review process may be accomplished without a public hearing, and the General Assembly has provided for automatic approval if the zoning board fails to act within the statutory time limit.[2] The same is not true of the special per-

---

[2] General Statutes § 8-3 (g) provides in pertinent part: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. If a site plan application involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the applicant shall submit an application for a permit to the agency responsible for administration of the inland wetlands regulations not later than the day such application is filed with the zoning commission. The decision of the zoning commission shall not be ren-

mit application process. A public hearing is mandated by General Statutes § 8-3c.[3] If the special permit process were purely ministerial there would be no need to mandate a public hearing. On more than one occasion, our Supreme Court has held that standards set forth in the zoning regulations for the grant of a special permit may be general in nature.

In *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 269, 121 A.2d 640 (1956), the court held that the board did not act arbitrarily, illegally or so unreasonably as to have abused its discretion in denying the plaintiff's petition for a special exception where the standard to be applied by the board was general in nature. In sustaining the action of the board, the court stated that the town's zoning regula-

---

dered on the site plan application until the inland wetlands agency has submitted a report with its final decision. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. *A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . .*" (Emphasis added.)

General Statutes § 8-26 provides in pertinent part: "All plans for subdivisions and resubdivisions, including subdivisions and resubdivisions in existence but which were not submitted to the commission for required approval, whether or not shown on an existing map or plan or whether or not conveyances have been made of any of the property included in such subdivisions or resubdivisions, shall be submitted to the commission with an application in the form to be prescribed by it. . . . *The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. . . . The failure of the commission to act thereon shall be considered as an approval,* and a certificate to that effect shall be issued by the commission on demand. . . ." (Emphasis added.)

[3] General Statutes § 8-3c (b) provides in pertinent part: "*The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception* . . . . Such commission *shall decide* upon such application or request within the period of time permitted under section 8-7d. . . ." (Emphasis added.)

tions empowered the zoning board of appeals to authorize a special exception to permit the location of a church in a "residence A" zone if, in the judgment of the board, the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured. Id., 267. The court concluded that although the new church planned by the plaintiff, including a rear parking lot for 150 cars, would serve the public convenience and welfare, its location in the middle of a highly developed residential area would substantially injure the use of neighboring property by reason of the increase in traffic, the loss of privacy and other conditions. Id., 268–69.

*Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 192 A.2d 886 (1963), furnishes another example of the authority of a local commission in dealing with applications pending before it for special exceptions. In *Cameo Park Homes, Inc.,* the Stratford zoning regulations permitted garden apartment development in RS-3 districts, which were zoned primarily for one family dwellings, if approved by the commission as a special exception. Id., 673–74. The garden apartment development planned by the applicant complied with the regulations governing such matters as number and character of dwelling units in each building and the percentage of land to be occupied by the buildings. Id., 675. The commission refused approval, however, because the proposed development would increase the density of population above the prescribed maximum for the zone, would affect the mode of living in the area by creating problems of safety for children, would tend to decrease the value of surrounding homes by increasing traffic and thus limiting privacy, and would be inconsistent with the comprehensive plan, which contemplated preservation of the land as a natural recreation and screen protection area. Id., 675–76.

In reaching its holding that the commission did not act arbitrarily, illegally or in abuse of its discretion in refusing to approve the application for the reasons given, the court stated that "[t]he commission's power to stipulate such restrictions as appear to it 'to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare' necessarily implies the power to withhold its approval of the proposed use in its entirety if the commission finds that the circumstances warrant that action." Id., 676–77. Further, the court concluded that there was no merit to the plaintiff's claim that the commission's function was limited to specify such further restrictions as it might consider necessary because the development satisfied the structure and planned use requirements for garden apartment development. Id., 676.

Likewise, in *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 213–14, 230 A.2d 606 (1967), the court upheld that section of the Milford zoning regulations which required that special permits be based on a finding that the specific permitted use will not be hazardous, inconvenient or detrimental to the character of the neighborhood. See also *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 113–14, 248 A.2d 922 (1968); *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 353–54, 232 A.2d 916 (1967); and *Farmington* v. *Viacom Broadcasting, Inc.,* 10 Conn. App. 190, 196, 522 A.2d 318, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987).

We conclude that the standards set forth in Stamford zoning regulation § 19.3.2 are intelligible, are not vague, and are easily applied to the facts of this case.

Finally, a review of the record shows that the board had "substantial evidence" to sustain the reasons it

gave for denial.[4] "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 49, 484 A.2d 483 (1984). The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site; id., 49–50; or through their personal knowledge of the area involved. *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 267, 455 A.2d 339 (1983). Where a zoning authority has expressed the reasons for its decision, a reviewing court 'may only determine if the reasons given are supported by the record and are pertinent to the decision,' and the authority's action ' "must be sustained if even one of the stated reasons is sufficient to support it.' " *Torsiello* v. *Zoning Board of Appeals,* supra, 50, quoting *Hoagland* v. *Zoning Board of Appeals,* 1 Conn. App. 285, 290, 471 A.2d 655 (1981)."

---

[4] "This so-called substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . [It] is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of 'weight of the evidence' or 'clearly erroneous' action . . . it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 541, 525 A.2d 940 (1987).

*Oakwood Development Corporation* v. *Zoning Board of Appeals,* 20 Conn. App. 458, 460–61, 567 A.2d 1260, cert. denied, 215 Conn. 808, 576 A.2d 588 (1990).

In the present case, both of the board's stated reasons for denial were amply supported by the record. The property in question was in a single family residential zone. There was evidence in the record to support the following findings: there was no need for an additional nursing home in the area; the location was too far from general hospitals; there was no public transportation available in the area; the local roads were narrow and winding, and lacked sidewalks; the facility would necessarily bring commercial and emergency vehicles into the area which would endanger children in the residential neighborhood; property values would be adversely affected; the sightlines on the streets were inadequate for such increased traffic; and there was not a sufficient need in the area for a 120 bed, 68,000 square foot facility to warrant intrusion into a single family neighborhood, especially because the facility was to be squeezed onto five acres of a fourteen and four-tenths acre parcel. On the basis of the record, including the board's members' knowledge of the area, we cannot say that the board acted arbitrarily in determining that the plaintiffs did not meet the standards set forth in the regulations. The reasons stated by the board were supported by the record.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiffs' appeal.

In this opinion the other judges concurred.