[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Garwin D. Hardisty, appeals to the superior court from the Woodbury Zoning Commission's July 25, 1995 denial of his application for a special permit. Hardisty had applied for a special permit, pursuant to §§ 5.6.A.2 and 5.13.5 of the Woodbury Zoning Regulations (Zoning Regulations), to change the use of retail space at Sherman Village from a children's clothing store to a doughnut shop with related food items. The following is the procedural background of the appeal. On April 6, 1995, Garwin D. Hardisty, the plaintiff, applied to the Woodbury Zoning Commission (Zoning Commission), the defendant, for a special permit, pursuant to §§ 5.6.A.2 and 5.13.5 of the Woodbury Zoning Regulations (Zoning Regulations), to change the use of retail space at Sherman Village from a children's clothing store to a doughnut shop with related food items. (Return of Record [ROR], Item A.1: Application #398 dated April 6, 1995, submitted by Garwin D. Hardisty; ROR, Item A.2: Letter dated March 27, 1995 from Garwin D. Hardisty to Zoning Enforcement Officer.) With the special permit application, Hardisty enclosed a site plan. (ROR, Item A.1.)
On April 11, 1995, the Zoning Commission accepted Hardisty's application for a special permit. (ROR, Item B.1.: Minutes of Zoning Commission of April 11, 1995.) The Zoning Commission scheduled a public hearing for May 9, 1995 at 7:30 pm, and referred CT Page 7506 the application to the Woodbury Planning Commission (Planning Commission). (ROR, Item B.1.) On May 3, 1995, the Planning Commission advised the Zoning Commission that "the application submitted by Garwin D. Hardisty for a change of use from a children's clothing store to sale of doughnuts and related food products at Sherman Village, Main Street South, is in compliance with the requirements of the Plan of Development for Middle Quarter, Area F." (ROR, Item B.1.: Minutes of Planning Commission of May 3, 1995.)
On April 28, 1995, and May 5, 1995, the Zoning Commission published a legal notice in the Waterbury Republican-American
stating that, "[p]ursuant to Section 8.3 of the Connecticut General Statutes the Woodbury Zoning Commission has scheduled public hearings for Tuesday, May 9, 1995 . . . to consider the following applications. . . . Application for Amendment to Special Permit # 398 submitted by Garwin Hardisty for a change of use from clothing retail to the sale of doughnuts and related products in . . . Sherman Village." (Emphasis omitted) (ROR, Item E.1.: May 9, 1995 public hearing legal notice.)
On May 9, 1995, the Zoning Commission held a public hearing on this matter. (ROR, Item B.2.: Minutes of Zoning Commission of May 9, 1995.) At this public hearing, the "consensus of the [Zoning] Commission was that more information was needed in writing regarding the nature of the business operation, a more detailed floor plan of the seating and the public floor area, the hours of operation, [and] more information regarding the traffic generation from the proposed business." (ROR, Item B.1.: Minutes of Zoning Commission of May 9, 1995, p. 10.) Consequently, the Zoning Commission continued the public hearing to May 23, 1995. (ROR, Item B.2.: Minutes of Zoning Commission of May 9, 1995.) At the May 23, 1995 public hearing, the Zoning Commission approved an extension for Hardisty's special permit application and continued the public hearing to June 13, 1995. (ROR, Item B.3.: Minutes of Zoning Commission of May 23, 1995.)
Subsequently, the Zoning Commission held a public hearing on this matter on June 13, 1995. (ROR, Item B.4.: Minutes of Zoning Commission of June 13, 1995.) At this public hearing, Mr. Moody, a Commissioner, stated that the Zoning Commission was concerned about the focus of the proposed doughnut shop, the intensity of the traffic and parking availability, and whether Route 6 could handle the amount of traffic generated from big business. (ROR, Item B.4.: Minutes of Zoning Commission of June 13, 1995.) CT Page 7507 Additionally, Janet Morgan, a Commissioner, requested a definition of "fast food." Mr. Moody stated that he did not have a finite definition and that the Zoning Commission would have to depend on its own definition and interpretation. (ROR, Item B.4.: Minutes of Zoning Commission of June 13, 1995.) As a result, the Zoning Commission discussed the definition of "fast food." The Zoning Commission also requested that the Town Planner prepare drafts granting and denying Hardisty's special permit application for the next meeting. (ROR, Item B.4.: Minutes of Zoning Commission of June 13, 1995.)
On May 23, 1995, Ms. Nancy Kontout, Chief Sanitarian of the Pomperaug District Department of Health (PDDH), sent a letter to the Planning Commission. (ROR, Item D.2.: Letter dated May 23, 1995 from Pomperaug District Dept. of Health to Planning Commission.) In this letter, she stated that the PDDH did not object to a doughnut shop with a limited food menu in Sherman Village. (ROR, Item D.2.: Letter dated May 23, 1995 from Pomperaug District Dept. of Health to Planning Commission.)
At the June 27, 1995 public hearing, the Town Planner provided the Zoning Commission with proposed drafts for granting and denying Hardisty's special permit application. (ROR, Item B.5.: Minutes of Zoning Commission of June 27, 1995.) The Zoning Commission discussed this special permit application further at its July 11, 1995 public hearing. (ROR, Item B.6.: Minutes of Zoning Commission of July 11, 1995.)
At its July 25, 1995 public hearing, the Zoning Commission denied Hardisty's special permit application for a change of use from a retail sales shop to a doughnut shop in Sherman Village. (ROR, Item B.7.: Minutes of Zoning Commission of July 25, 1995.) Although the PDDH and the Planning Commission had approved the special permit application.[1]
The court finds that the plaintiff Hardisty is statutorily aggrieved having proved his ownership of the property. WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991).
In his brief, Hardisty argues that the "denial of a special permit to one applicant may be discriminatory where permits have been granted to other applicants who were similarly situated. . . . It is relevant, therefore, to compare how the defendant Zoning Commission applied the ordinance in question to other similar uses CT Page 7508 in the same zoning district. . . ." (Hardisty's Brief, p. 13 )
Hardisty also refutes each of the four grounds upon which the Zoning Commission based its denial of his special permit application. First, Hardisty argues that, despite the Zoning Commission's decision that Hardisty failed to supply sufficient information for the Zoning Commission to make a determination in accordance with § 5.6A.2b of the Zoning Regulations that the proposed use is not a prohibited use listed in § 5.6A.3c, Hardisty provided the Zoning Commission with detailed information describing "the intended use of the premises, the hours of operation, anticipated volume of customers, peak business hours, signage, the design of the interior of the premises, and the fact that no baking would occur on premises." (Hardisty's Brief, p. 14.) Further, Hardisty argues that because the Zoning Regulations did not define "fast food" or "restaurant" the Zoning Commission lacked guidance in defining these terms. Thus, Hardisty asserts that, under these circumstances, the Zoning Commission must construe the Zoning Regulations against the prohibition of the proposed use.
Second, Hardisty argues that, despite the Zoning Commission's decision that Hardisty failed to supply adequate information concerning traffic generation for the Zoning Commission to fully evaluate the impact of the proposed use in accordance with Zoning Regulations §§ 5.6A.2b and 10.4, "where a use is already permitted there is a conclusive presumption that such use does not adversely affect the district and the zoning board is precluded from further inquiry into the effect of the permitted use on traffic, municipal services, property values or the general harmony of the district." (Hardisty's Brief, p. 21.) Therefore, Hardisty argues that because the proposed doughnut shop is not prohibited by the Zoning Regulations and is a permitted use, it is illegal for the Zoning Commission to deny Hardisty's special permit application due to concerns about traffic generation.
Third, despite the Zoning Commission's decision that the evidence submitted by Hardisty "concerning traffic impacts was contradicted by evidence submitted for an operation similar in nature and the applicant failed to discuss and explain the reasons for the discrepancies," Hardisty states that "[i]n disposing of an application for a special permit, the Zoning Commission is acting in an administrative capacity. The Zoning Commission is bound by its own Regulations and if an applicant meets the requirements for the issuance of a special permit contained in the Zoning Regulations, he is entitled to receive the permit." (Hardisty's CT Page 7509 Brief, pp. 22-23.) Consequently, Hardisty argues that because the Zoning Regulations do not require an applicant, as a condition of approval, to compare his intended use of the property with operations similar in nature located in other districts, the Zoning Commission acted illegally when it denied Hardisty's special permit application based upon his failure to make this comparison.
Fourth, despite the Zoning Commission's decision that Hardisty failed to clarify the approval granted by the PDDH, concerning substantial renovation of the existing septic system, Hardisty argues that the Zoning Regulations do not permit the Zoning Commission to base its denial of Hardisty's special permit application on the ground that it found the conditions of PDDH's approval of the proposed doughnut shop unclear. Further, Hardisty argues that he properly applied to the PDDH for a food service license, and whether he is entitled to a food service license constitutes an issue beyond the Zoning Commission's authority. Therefore, Hardisty argues that it is illegal, arbitrary and an abuse of discretion for the Zoning Commission to deny his special permit application because the Zoning Commission is unclear as to the conditions PDDH imposed on Hardisty for the issuance of a food service license.
Additionally, Hardisty argues that the evidence he presented at the Superior Court hearings to supplement the Zoning Commission's Return of Record demonstrates that, in the past, the Zoning Commission has not applied Zoning Regulations § 5.6A.3c's prohibition against "fast food predominantly take-out restaurants" to deny special permits for uses similar to Hardisty's proposed use. Consequently, Hardisty argues that because the Zoning Commission ignored its own precedent when it denied his special permit application, the Zoning Commission acted arbitrarily and capriciously.
Finally, Hardisty argues that because the only reasonable action the Zoning Commission could have taken was to grant his special permit application, the court should order the Zoning Commission to grant his special permit without returning the matter to the Zoning Commission for further proceedings.
In response, the Zoning Commission argues that this court "can grant relief on appeal only where the local zoning authority has acted arbitrarily or illegally, in abuse of its discretion. . . . The burden is on the plaintiff to prove that the act of a commission was illegal or arbitrary. . . . In the present case, . . . the CT Page 7510 plaintiff [Hardisty] has failed to sustain his burden of proof." (Zoning Commission's Brief, p. 7.)
First, the Zoning Commission argues that Hardisty failed to supply sufficient information for the Zoning Commission to determine whether the proposed use was not a prohibited use under the Zoning Regulations. The Zoning Commission argues that because Hardisty's proposed doughnut shop is located in the Middle Quarter District of Woodbury, he cannot violate Zoning Regulations § 5.6A.3c, which prohibits the use of property as "fast food predominately take out restaurants." Although the Zoning Regulations, do not define the term "fast food," "predominately," "take out," nor "restaurant," the Zoning Commission argues that it has the power to interpret its regulations. Further, the Zoning Commission argues that, contrary to Hardisty's brief, the court does not have to construe an ambiguous zoning regulation in favor of Hardisty's proposed use. Additionally, the Zoning Commission argues that Hardisty's failure to provide sufficient information and clarification regarding whether his proposed use constituted "fast food" was a sufficient ground for denying his special permit application.
Second, the Zoning Commission argues that Hardisty "failed to supply adequate information concerning traffic generation for the Zoning Commission to fully evaluate the impact of the proposed use in accordance with the Woodbury Zoning Regulations." (Zoning Commission's Brief, p. 20.) The Zoning Commission argues that it "did not, as the plaintiff asserts, deny the application due to traffic generation, but rather due to the lack of sufficient information regarding traffic generation. The Zoning Commission was therefore unable to fully evaluate the impact of the proposed use." (Zoning Commission's Brief, p. 23.)
Third, the Zoning Commission argues that Hardisty failed to explain why the evidence he submitted concerning traffic generation was contradicted by evidence previously submitted to the Zoning Commission for an operation similar in nature to the proposed use. Consequently, the Zoning Commission argues that it resorted to information that had been presented on a previous special permit application for the operation of a Dunkin' Donuts franchise in another local mall to determine the intensity of Hardisty's proposed use. Thus, the Zoning Commission argues that because Hardisty did not sufficiently explain its proposed use, he failed to provide the Zoning Commission with adequate information to determine the intensity of the proposed use. CT Page 7511
Fourth, the Zoning Commission argues that Hardisty failed to explain to the Zoning Commission certain conditions of the approval granted by the PDDH. Specifically, the Zoning Commission argues that it denied Hardisty's special permit application because Hardisty failed to adequately explain why the conditions on the PDDH's approval were significantly inconsistent with the proposed use of the property as represented to the Zoning Commission. The Zoning Commission argues that it was Hardisty's responsibility, not the Zoning Commission's responsibility, to obtain and present proper, applicable approval from the PDDH, and to clarify why the requirements in the PDDH's letter did not apply.
The Zoning Commission finally argues that if, arguendo, the court were to sustain Hardisty's appeal, the court should remand this matter to the Zoning Commission for a further hearing. Moreover, the Zoning Commission argues that it would constitute an impermissible judicial usurpation of the administrative functions of the Zoning Commission for the court to direct what action the Zoning Commission should take.
General Statutes § 8-2 (a) establishes that zoning commissions "may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values."
"The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Internal quotation marks omitted.) Whisper WindDevelopment Corporation v. Planning Zoning Commission, 32 Conn. App. 515,520, 630 A.2d 108 (1993), aff'd, 229 Conn. 176,640 A.2d 100 (1994); see also A.P. W. Holding Corp. v. Planning ZoningBrd., 167 Conn. 182, 185, 355 A.2d 91 (1974).
"The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be CT Page 7512 individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) Whisper Wind Development Corporation v.Planning Zoning Commission, supra, 32 Conn. App. 519; see alsoBarberino Realty Devel. v. Planning Zon. Comm'n, 222 Conn. 607,612, 610 A.2d 1205 (1992).
"A zoning commission acts in an administrative capacity in its review of an application seeking a special permit use."Connecticut Health Facilities, Inc. v. Zoning Board of Appeals,29 Conn. App. 1, 6, 613 A.2d 1358 (1992); see also Double I LimitedPartnership v. Planning Zoning Commission, 218 Conn. 65, 72,588 A.2d 624 (1991). "Acting in this administrative capacity, the zoning commission's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." (Brackets omitted.) Whisper WindDevelopment Corporation v. Planning Zoning Commission, supra,32 Conn. App. 520; see also Double I Limited Partnership v. Planning Zoning Commission, supra, 218 Conn. 72. "The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. . . ." (Internal quotation marks omitted.) Felsman v. Zoning Commission, 31 Conn. App. 674, 678,626 A.2d 825 (1993). "Connecticut courts [however] have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process." Connecticut HealthFacilities, Inc. v. Zoning Board of Appeals, supra, 29 Conn. App. 6. Further, "[o]n more than one occasion, our Supreme Court has held that standards set forth in the zoning regulations for the grant of a special permit may be general in nature." ConnecticutHealth Facilities, Inc. v. Zoning Board of Appeals, supra, 29 Conn. App. 7. See also Malafronte v. Planning Zoning Board, 155 Conn. 205,213-14, 230 A.2d 606 (1967); Cameo Park Homes, Inc. v.Planning Zoning Commission, 150 Conn. 672, 192 A.2d 886 (1963);West Hartford Methodist Church v. Zoning Board of Appeals,143 Conn. 263, 269, 121 A.2d 640 (1956).
"The trial court ha[s] to decide whether the board correctly interpreted the section of the regulations and applied it with reasonable discretion to the facts." (Brackets omitted.) DoubleI Limited Partnership v. Planning Zoning Commission, supra,218 Conn. 72.
Zoning Regulations § 3.1 establishes the Middle Quarter (MQ) CT Page 7513 District, while Zoning Regulations § 5.6A, entitled "Middle Quarter District," regulates uses in the MQ District. The MQ District is a "special use district subject to separate planning, use, design and development standards to insure a compatible relationship between existing and permitted uses within the district and those uses adjacent to it. . . . No land, buildings or other structures (including signs) or part thereof shall be used, occupied, changed in use or constructed, enlarged or extended in the MQ District until a Site Development Plan has been submitted and approved by the Zoning Commission and a Special Permit has been granted by the Commission." Zoning Regulations § 5.6A.1. Further, Zoning Regulations § 2.1.2 provides that the "word `shall' is mandatory and not discretionary."
Meanwhile, "[s]ubject to the approval of a Site Development Plan and the granting of a Special Permit by the Commission in the MQ District, land may be used and structures may be altered or constructed for all uses not expressly prohibited by this section or by these Regulations." Zoning Regulations § 5.6A.2.
Pursuant to Zoning Regulations § 5.6A.2, the Zoning Commission should not grant a special permit until, inter alia, the "Zoning Commission finds that the proposed use will be consistent with the existing uses in the district and will not impair the intent of these Regulations and will fully safeguard the appropriate use of the land in the immediate vicinity of the proposed use and that the proposed construction, alteration and improvement conforms to the requirements of Section 5.6A.4 and 5.6A.5 of these Regulations." Zoning Regulations § 5.6A.2.b. Further, Zoning Regulation § 5.6A.3 enumerates several uses which, in addition to the prohibited uses set forth in Zoning Regulations § 5.10, are expressly prohibited from the entire MQ District. Id. In pertinent part, Zoning Regulations § 5.6A.3.c prohibits "[f]ast food, predominately take-out restaurants" from the MQ District. The Zoning Regulations, however, do not define what constitutes a fast food, predominately take-out restaurant.
Further, Zoning Regulations § 10, entitled "Special Exceptions and Special Permits," provides additional requirements regarding uses for which a special exception or special permit is requested.
The Zoning Commission provided four reasons why it denied Hardisty's special permit application for a change of use from a retail sales shop to a doughnut shop in Sherman Village. "Where a zoning agency has stated its reasons for its actions, the court CT Page 7514 should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) Cole v.Planning Zoning Commission, 40 Conn. App. 501, A.2d (1996), citing Bloom v. Zoning Board of Appeals, 233 Conn. 198, 208,658 A.2d 559 (1995). The "decision must be sustained if even one of the stated reasons is sufficient to support it. . . . This applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Brackets omitted; internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
The Zoning Commission decided: "(1) "[t]hat the applicant [Hardisty] has failed to supply sufficient information for the Commission to make a determination in accordance with sections 5.6.A.2b of the Zoning Regulations that the proposed use is not a prohibited use listed in Section 5.6.A.3c (fast food, predominately take-out restaurants)"; (2) "[t]hat the applicant has failed to supply adequate information concerning the traffic generation in order for the Commission to fully evaluate the impact of the proposed use in accordance with Sections 5.6A.2b and 10.4 of the Zoning Regulations. In particular the Commission requested information concerning traffic generation during peak traffic periods in order to evaluate the impact on traffic flow and congestion"; (3) "[t]hat the evidence submitted by the applicant concerning traffic impacts was contradicted by evidence submitted for an operation similar in nature and the applicant failed to discuss and explain the reasons for the discrepancies"; and (4) "[t]hat the Commission requested the applicant clarify the approval granted by the Pomperaug District Department of Health concerning substantial renovation of the existing septic system." (ROR, Item B.7.: Minutes of Zoning Commission of July 25, 1995.)
In each of these four reasons, the Zoning Commission denied Hardisty's special permit application because Hardisty had failed to provide sufficient evidence. Specifically, in the first two reasons, the Zoning Commission denied Hardisty's special permit application because of Hardisty's alleged failure to provide sufficient information prevented the Zoning Commission from determining if Hardisty's proposed use would violate Zoning Regulations §§ 5.6a.2b, 5.6A.3c or 10.4. In the third and fourth reasons cited, the Zoning Commission denied the application because Hardisty did not contradict specific opposition evidence or explain evidence the Zoning Commission found unclear. Although it had CT Page 7515 sufficient information before it to do so, The Zoning Commission, however, did not find whether or not Hardisty's proposed use requested in his special permit application would violate Zoning Regulations § 5.6A.2 or § 5.6A.3 or § 5.6A.4 or § 5.6A.5. (Emphasis added.) The Zoning Commission has no discretion to deny special permit application if the regulations and statutes are satisfied. The Zoning Commission, however, did not make a determination as to whether the regulations were either satisfied or unsatisfied. Because the Zoning Commission did not find that Hardisty's special permit application would violate the Zoning Regulations, the Zoning Commission improperly denied Hardisty's special permit. The court sustains Hardisty's appeal on this ground.
In his brief, Hardisty maintains that, upon prevailing in his appeal, the court should order the Zoning Commission to grant his special permit without returning the matter to the Zoning Commission for further proceedings. "When, on a zoning appeal, it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires. . . . In the absence of such circumstances, however, the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority." (Citations omitted; internal quotation marks omitted.) Mobil Oil Corporation v. ZoningCommission, 30 Conn. App. 816, 820, 622 A.2d 1035 (1993).
The appeal is sustained.
Flynn, J.