[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
STATEMENT OF APPEAL
The plaintiffs, Peter DiPietro, Ann DiPietro and Thomas DiPietro, appeal from a decision of the defendant, Planning and Zoning Board of the City of Milford (PZB), in which the PZB denied the DiPietros' applications for a modification of a special permit and amended coastal site plan.
BACKGROUND
The DiPietros allege that they are the owners of premises located on 30 Rogers Avenue in Milford, Connecticut, in an R-12.5 single family residential zoning district, located along the Milford Harbor. (Plaintiffs' Appeal), dated February 23, 1996, para. 1). They further state that a special permit to construct a bulkhead and to allow a pier, ramp and floats was first granted CT Page 578 in September, 1966. (Plaintiffs' Brief, dated August 8, 1996, para. 1 ).
On January 31, 1994, the DiPietros had submitted an application for a special permit, site plan review and coastal area site plan to install six boat slips with attendant docking and storage facilities. (Return of Record [ROR], Item d, Letter dated January 19, 1995). On January 17, 1995, the PZB granted the DiPietros' application. (ROR, Item d, with attached permit).
Pursuant to General Statutes § 22a-361, the DiPietros applied to the State of Connecticut Department of Environmental Protection (CTDEP) for approval to dredge the boat basin area adjacent to their property. (ROR, Item e, Letter dated May 8, 1995). On May 8, 1995, CTDEP issued the DiPietros a certificate of permission to conduct maintenance dredging in Milford Harbor. (ROR, Item e). In addition, on September 20, 1995, CTDEP issued the DiPietros a permit to repair an existing bulkhead and to install two travel lift piers, a thirty feet fixed pier and a ramp to a main float with six finger floats for a boating facility. (ROR, Item f, Letter dated September 20, 1995 with attached permit no. TWSD-JG-87-317). The CTDEP permit reduced the size of the boat basin by limiting the dredging area thirty feet from the bulkhead. (ROR, Item i, Memorandum from Christopher Drake to Peter Crabtree dated October 16, 1995). Thus the CTDEP permit differed from the PZB permit by adding two travel lift piers[1] and a 30 feet high access pier which were needed to provide access to the boats. (ROR, Item i).
At the request of the Assistant City Planner, the DiPietros, through their agent, Christopher Drake, next applied to the PZB to modify the existing special permit in order to conform to the certificate of permission and the dredging and structures permit issued on May 8, 1995 and September 20, 1995, respectively, by the CTDEP. (ROR, Item m, Request for Special Permit Amendment dated December 17, 1995). On January 16, 1996, the PZB conducted a public hearing on the DiPietros' application. (ROR, Item o, Public Hearing Notice, and Item p, Official Minutes of the Hearing).
On January 30, 1996, the Subdivision and Special Permits Committee convened and discussed the DiPietros' application for a special permit. (ROR, Item t, Minutes of Committee Meeting). On February 6, 1996, the PZB unanimously denied the DiPietros' petition for a special permit modification for a travel lift and CT Page 579 access pier because it "would constitute commercialism of this facility in a single family residential zone area." (ROR, Item v, Verbatim Minutes of Board Meeting, February 6, 1996). By Notification of Decision dated February 6, 1996, the PZB notified the DiPietros that the petition "for a Special Permit for an addition of travel lift . . . and 6' x 30' timber access pier on parcel 4, block 409, Assessor's Map 44, of which Peter, Ann and Thomas DiPietro are the owners" was denied. (ROR, Item w, Copy of Notice to be published in New Haven Register).
JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board to the superior court. "[A] statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). "Such provisions are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." Id.
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). An owner of the subject property is aggrieved and entitled to appeal. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303, 308,592 A.2d 953 (1991).
In the present case, the DiPietros pleaded that they are "owners of a certain piece or parcel of real property known as 30 Rogers Avenue, Milford, Connecticut." (Appeal, para. 1). The DiPietros further pleaded that they "applied to the Board to modify and amend the existing special permit and coastal area site plan to conform to Board's previous approval of January 17, 1995, to the structures and dredging permit issued by the CTDEP in September of 1995." (Appeal, para. 5). At trial, Peter DiPietro testified that he, his wife, and son are the owners of property located at 30 Rogers Avenue in Milford, CT. (Transcript, p. 9) At trial, the DiPietros also submitted an official copy of the Milford Land Records documenting their ownership of the property known as 30 Rogers Avenue, in the City of Milford, CT. CT Page 580 (Plaintiff's Trial Exhibit A). Therefore, the DiPietros have properly pleaded and proven aggrievement.
Timeliness and Service of Process
General Statutes 8-8 (b) provides in pertinent part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."
Subsection (e) further provides that "[s]ervice of legal process for an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The DiPietros allege that "the Board denied the plaintiffs' applications for a special permit and coastal site plan approval to amend their boating facilities and notice of such decision was duly published in the New Haven Register on February 9, 1996." (Appeal, para. 7). On February 23, 1996, this appeal was commenced by service of process on the Clerk of the City of Milford, the Clerk of the Milford Planning and Zoning Board and the Chairman of the Milford Planning and Zoning Board. The record includes a notice of action taken with respect to, among other applications, the special permit at issue. (ROR, Item w). The following notation appears at the bottom of this notice "[t]his adv. to be published in the NEW HAVEN REGISTER Friday, February 9, 1996." (ROR, Item w).
The court finds that February 9, 1996 was the date of publication of the decision, and finds this appeal was commenced in a timely fashion by service of process upon the proper parties.
SCOPE OF REVIEW
"A zoning commission acts in an administrative capacity in its review of an application seeking a special permit use. Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the CT Page 581 general standards in the regulations have been met in the special permit process." Connecticut Health Facilities, Inc. v. ZoningBoard of Appeals, 29 Conn. App. 1, 6, 613 A.2d 1358 (1992). "[I]n reviewing site plans the commission has no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and] is under a mandate to apply the requirements of the regulations as written." (Brackets in original; internal quotation marks omitted.) City of Norwich v.Norwalk Wilbert Vault Co., 208 Conn. 1, 13, 544 A.2d 152 (1988). "With respect to review of a coastal site plan, proceedings before planning and zoning commissions are classified as administrative. . . . Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." DeBeradinis v. Zoning Commission, 228 Conn. 187,198, 635 A.2d 1220 (1994).
A zoning board "is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Citations omitted; internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994).
ARGUMENTS
In their appeal, the DiPietros allege that the PZB's denial was arbitrary, illegal and an abuse of discretion because of the following: "(a) the decision deprived the Plaintiffs of their property rights and of the reasonable use and enjoyment of their property in accordance with the standards and provisions of the Milford Zoning Regulations without due process of law; (b) the decision ignored, and is contrary to, the substantial weight of the evidence in the record; (c) its decision failed to consider the factors and standards set forth in the Milford Zoning Regulations; (d) it lacks jurisdiction over the proposed structures which are exclusively within the jurisdiction of the State of Connecticut; and (e) its decision deprived the Plaintiffs of their property rights and of the reasonable use and enjoyment of their property in accordance with the standards and provisions of Connecticut General Statutes, including, without CT Page 582 limitation, § 22a-359 et. seq., without due process of law." (Appeal, para. 9).
In their brief, the DiPietros argue that because the PZB had previously approved a special permit for six boat slips and attendant facilities, it is precluded from further inquiry into its use. The Milford Harbor Management Commission reviewed the permit application and found it to be in compliance with the Milford Harbor Management Plan. (ROR, Item k, Letter dated November 17, 1995).
In response, the PZB disputes that it was required to approve the DiPietros' second special permit application because it had previously approved a special permit in 1995. The PZB contends that under Milford Zoning Regulations § 7.2.8[2] the 1995 special permit expired and, thus, the prior approval has no res judicata or collateral estoppel effect on the second application. In its brief, the PZB notes that the DiPietros did not start construction within the required one year time limit or apply for an extension.
The PZB further contends that it properly rejected the second application because of the material change in circumstances. The PZB states that the 1995 permit allowed construction of an additional floating dock with six boat slips and an 11' x 75' elevated timber fixed pier, whereas the second application required construction of twin 120' long tracks and placement of a commercial-type travel lift.
The DiPietros next dispute the PZB's characterization of the travel lift as commercial in nature. They claim that the PZB ignored evidence that the travel lift was only for family use. They also argue that neither General Statutes §§ 14-1 (11) and14-1 (47)[3] nor Milford Zoning Regulations § 3.1.3.8[4]
define a travel lift as a commercial vehicle. Thus, they conclude that the travel lift is not a commercial vehicle and that, even if it was defined as such, Milford Zoning Regulations § 3.1.3.8 permits the storage of one such vehicle on the premises.
In response, the PZB argues that the DiPietros' application did not comply with Milford Zoning Regulations § 3.1.2.17[5] and 3.1.5.3[6] because the central feature of their application was the addition of a travel lift. (Defendant's Brief, p. 7). The PZB claims that it relied on the testimony of the DiPietros' agent, Christopher Drake[7], and the CT Page 583 manufacturer's brochure for the travel lift[8] in concluding that the travel lift was a commercial-type vehicle prohibited from use in a R-12.5 zone by Milford Zoning Regulations § 3.1.5.3.
The DiPietros next argue that the travel lift is an accessory use of the property as defined in the Milford Zoning Regulations[9] because the launching of boats via the travel lift is an accessory use to the mooring of boats.
In response, the PZB contends that the travel lift does not constitute an accessory use under Milford Zoning Regulations § 11.2, supra, because a travel lift is not customarily used in connection with private boathouses, landings and docks. The PZB states that the use of the word "customarily" means a common, habitual use associated with the primary use. The PZB also argues that the travel lift is not "minor in significance," but would be the primary feature on the property. The PZB notes that there are no other travel lifts on any residential property in Milford.
The DiPietros further contend that the PZB has limited their riparian rights by failing to determine whether their plan conforms to the Milford Zoning Regulations, which they note do not provide for specific standards governing in-water structures or types of permissible equipment which may be used to launch boats.
The DiPietros also argue that the CTDEP — not the PZB — has jurisdiction over the in-water structures, dredging and filling pursuant to General Statutes §§ 22a-105 (b)[10]
and 22a-359[11]. Conceding that the PZB has authority over the "landward" structures, which are attached to the premises at or above the highwater mark, the DiPietros contend that the fixed pier and travel lift are "waterside" and thus within CTDEP's jurisdiction. They maintain that the PZB's assertion of concurrent jurisdiction over the "waterside" structures places them in a "Catch-22." They also argue that because the PZB received notice of a hearing by CTDEP, the PZB is estopped from opposing the plan by its failure to object on a timely basis.
In response, the PZB states that it properly exercised jurisdiction over the DiPietros' application. The PZB reasons that even though the CTDEP has jurisdiction over "waterside" structures, because the travel lift tracks and piers are, in part, on land, the PZB has jurisdiction over an aspect of the CT Page 584 project. The PZB also rejects the DiPietros' contention that because it had earlier approved a special permit of the landside facilities, only CTDEP's approval was necessary. As discussed above, the PZB maintains that the prior permit expired, thus the DiPietros needed both PZB and CTDEP approvals for its second application.
DISCUSSION
"A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulation. The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. Acting in this administrative capacity, the zoning commission's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." Whisper WindDevelopment Corp. v. Planning and Zoning Commission, 32 Conn. App. 515,520, 630 A.2d 108 (1993), aff'd, 229 Conn. 176,640 A.2d 100 (1994).
"With respect to review of a coastal site plan, proceedings before planning and zoning commissions are classified as administrative. . . . Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." (Citations omitted; internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 198.
"The designation of a particular use of property as a permitted use establishes a conclusive presumption that such a use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." TLC Development,Inc. v. Planning and Zoning Commission, 215 Conn. 527, 532-33,577 A.2d 288 (1990).
On January 17, 1995, the PZB approved a special permit amendment and coastal site plan for six boat slips and attendant CT Page 585 facilities. General Statutes § 22a-361 provides that "[n]o person . . . shall dredge . . . in the tidal, coastal or navigable waters . . . until such person . . . has submitted an application. . . ." The DiPietros could not effect the plan without the CTDEP approval for which it had applied. CTDEP issued a certificate of permission on May 8, 1995, and a dredging and structures permit on September 20, 1995. (ROR, Items e, f). The CTDEP would not permit dredging within 30' of the coastal line. (ROR, Items e, Special Terms and Conditions No. 2). This condition, in turn, necessitated changes to the DiPietros' original plan, requiring the installation of the fixed piers and travel lifts to access the boats. (ROR, Item m, Memorandum from Peter Crabtree to Chairman, Planning Zoning Board). Subsequently, the Assistant City Planner alerted the PZB that he had accepted a "request for a Special Permit Amendment of Peter DiPietro to amend by relocating an approved dock configuration together with operation of a travel lift." (ROR, Item m). The public hearing was scheduled for January 16, 1996. (ROR, Item n, Letter from L. Stock to Chris Drake).
The court finds that the December 17, 1995 application did not expire and that the subject application was an amendment or modification to the originally approved permit. After the PZB granted the DiPietros a special permit on January 17, 1995, they could not begin construction because they were required to obtain a dredging permit from CTDEP to effect their plan. Within the one year time limit provided for in Milford Zoning Regulations § 7.2.8, the DiPietros then filed an application on February 1, 1996, to amend the existing special permit because the CTDEP approval did not conform to the existing PZB special permit. (ROR Item l, Application for Coastal Site Plan Review.)
Additionally, the PZB treated this request as either a modification or amendment. The Assistant City Planner alerted the PZB that he had accepted a "request for a Special Permit Amendment of Peter DiPietro to amend by relocating an approved dock configuration together with operation of a travel lift." (ROR, Item m). When the PZB denied the DiPietros' request, Mr. Hoffman stated, "I move to deny the entire request of Peter DiPietro to modify the approval granted. . . ." (ROR, Item v, Verbatim Minutes of the PZB Meeting on February 6, 1996). Thus, the court finds that the DiPietros submitted an amended special permit application[12] and that their application had not expired because they could not have begun construction within the one-year period mandated by Milford Zoning Regulations § CT Page 586 7.2.8.
Even if the court were to find that Milford Zoning Regulations allowed "commercialism" with respect to a travel lift to serve as a basis for the PZB's denial of the subject application, the record does not support such a finding. Here, the DiPietros applied to the PZB to modify the existing special permit it had issued to conform to the certificate of permission and the dredging and structures permit issued by the CTDEP on May 8, 1995 and September 20, 1995, respectively. (ROR, Item m). The PZB denied the petition for boat facilities because "the newly requested activities would constitute commercialism of this facility located in a single family residential zone area. . . ." (ROR, Item v).
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." Bloom v. Zoning Board of Appeals, 233 Conn. 198,208, 658 A.2d 559 (1995). "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning. regulations." TLC Development, Inc. v. Planning andZoning Commission, supra, 215 Conn. 529-30.
Milford Zoning Regulations § 3.1.2.17 governs private boathouses, landings and docks in an R-12.5 residential district. It specifies that these structures are "subject to the following conditions and safeguards: (Amended effective 9/10/94): (1) The number of boat slips, berths, moorings and similar spaces proposed shall be consistent with the Milford Harbor Management Plan as determined by the Milford Harbor Management Commission; (2) The lot owner shall obtain all necessary State and Federal permits prior to constructing such boating facilities; (3) Such boat facilities shall be designated for the exclusive use of the owner." (ROR, Item aa).
The record reflects that the Milford Harbor Management Commission reviewed the DiPietros' plan and found it to be in compliance with the Milford Harbor Management Plan. (ROR, Item k). In addition, the DiPietros obtained the necessary permits CT Page 587 from CTDEP on May 8, 1995 and September 20, 1995. (ROR, Items e, f). Chris Drake, the DiPietros' agent, also stated at the public hearing that the boat facilities were private and for the use of family and friends. (ROR, Item q, Verbatim Minutes of Planning and Zoning Board Meeting, pps. 1, 30). He also stated that the DiPietros had permits going back to the 1960's. (ROR, Item q, p. 6). The record reveals no evidence that the DiPietros had or were intending to establish a commercial boating facility. (ROR, Item q, p. 4). One neighbor, Michael Wagner, however, objected to the proposal and requested that "the Board put some kind of language defining what could be done with this property and limiting the use of the marina." (ROR, Item q, p. 27). He also sent a letter to PZB objecting to the DiPietros' proposal "because he believed that "the owner of this property has often attempted to build a marina here." (ROR, Item r, Letter from Michael Wagner to PZB). However, another neighbor, Stanley Newman, expressed his support for the DiPietros and indicated they "keep [the property] in wonderful shape." (ROR, Item q, p. 24). Chris Drake responded to Mr. Wagner's comments and indicated that the docks were for the use of family and friends. (ROR, Item q, p. 30). The PZB debated the size of the pier because "the opportunity of commercialism is there . . . the vista views will be taken away." (ROR, Item t, p. 2). There is no substantial evidence in the record that the DiPietros intend to establish a commercial boating facility.
Milford Zoning Regulations § 3.1.2.17 does not prohibit the use of a travel lift. (ROR, Item aa). "Certainly, vague and undefined aesthetic considerations alone are insufficient to support the invocation of the police power, which is the source of all zoning authority." DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970).
The court finds that the record does not support the PZB's finding that the proposal would constitute commercialism of the property. Accordingly, for the reasons stated above, the court finds that the record does not support the reason given by the PZB for the denial of the special permit and that the court sustains the plaintiffs' appeal and sets aside the PZB's denial of the special permit and coastal area site plan approval. The PZB is ordered to grant the plaintiffs' special permit and coastal site plan application, upon the condition that the boat facilities are designated for the exclusive use of the owner(s).
Joseph H. Sylvester, Judge CT Page 588