WHISPER WIND DEVELOPMENT CORPORATION *v.*
PLANNING AND ZONING COMMISSION OF THE
TOWN OF MIDDLEFIELD ET AL.
(11497)

DUPONT, C. J., FREEDMAN and SCHALLER, JS.

Argued May 4—decision released August 17, 1993

*Lori Welch-Rubin,* with whom, on the brief, was *Roger Sullivan,* for the appellant (plaintiff).

*Thomas P. Byrne* for the appellees (defendants).

FREEDMAN, J. The plaintiff appeals from the judgment of the trial court dismissing its appeal from the decision of the planning and zoning commission of the town of Middlefield, which had denied its application for a special permit. The plaintiff's application sought

approval for the excavation and removal of sand and gravel from a fifteen acre parcel of land. On appeal, the plaintiff claims that the trial court improperly (1) concluded that the plaintiff's failure to meet the general health, safety and welfare requirements set forth in the town's zoning regulations may be considered in determining whether to grant or deny the permit and need not be considered only for the purpose of placing conditions on a special permit, and (2) reviewed the actions of the commission by applying the discretion afforded to a zoning authority acting in its legislative capacity as opposed to its administrative capacity. We affirm the judgment of the trial court.

The following facts are not in dispute. The plaintiff is the developer of the Whisper Wind subdivision located on Whisper Wind Road in Middlefield. The plaintiff seeks to excavate and remove sand and gravel from lots that are a part of the Whisper Wind subdivision. The lots to be excavated are located behind lots on which houses have already been built. The only access to the lots to be excavated is a narrow strip of land (approximately fifty feet wide and 450 feet long) that begins at Whisper Wind Road and passes through the subdivision adjacent to some of the lots on which houses are located. Whisper Wind Road is a short U-shaped street developed by the plaintiff as part of the subdivision. There are a number of undeveloped and unsold lots along the road. The plaintiff's plan would have the trucks, filled with excavated materials, travel on the narrow strip of land and turn onto Whisper Wind Road. The trucks would then travel 1000 feet on Whisper Wind Road past lots on which, at present, there are no houses, finally turning onto Hubbard Street.

On December 7, 1990, the plaintiff filed an application for a special permit in accordance with § 9 and § 10.02 of the town's regulations. Section 9 of the regulations sets forth the special conditions for the require-

ments involving excavation and removal of earth products. Section 10.02 sets forth the general considerations for approval of special permits.[1]

Commencing on January 23, 1991, the commission held public hearings on the special permit application. On April 10, 1991, the commission denied the plaintiff's application for the special permit stating that "[t]he proposed use would not be harmonious with the existing development in the district and would be detrimental to the orderly development of adjacent properties" and that "[t]he location, size, nature and intensity of the use would create a pedestrian and traffic hazard and would conflict with the traffic characteristics of the surrounding neighborhood." The plaintiff timely appealed from the commission's decision to the Superior Court.

In the trial court, the plaintiff claimed that its application complied with all of the requirements of §§ 9 and

[1] "Section 10.02. Special Permits

"10.02.01. General Considerations: The Planning and Zoning Commission may, upon application, authorize the issuance of special permits where required for specific uses within these regulations. *In authorizing the issuance of a special permit, the Commission shall take into consideration the public health, safety and welfare* and shall prescribe appropriate conditions and safeguards to insure the accomplishment of the following objectives:

\* \* \*

"(2) That the proposed use shall be of such location, size, and character that, in general, it will be in harmony with the appropriate and orderly development of the district in which it is proposed to be situated and will not be detrimental to the orderly development of adjacent properties in accordance with the zoning classification of such properties.

"(3) That, in addition to the above, in the case of any use located in, or directly adjacent to or served by way of, a residential district:

"(a) the location and size of such use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from and in the vicinity of the use will not be hazardous or inconvenient to, or detrimental to the character of the said residential district or conflict with the traffic characteristics of the neighborhood." (Emphasis added.)

10.02 of the regulations and that the reasons given by the commission in denying its application (1) constituted a legally insufficient basis for denial of the application, (2) had no factual basis, and (3) were motivated by prejudice and bias. The plaintiff further claimed that it was denied equal protection of the law and due process of law under the Connecticut and the United States constitutions. These equal protection and due process claims, however, were orally withdrawn by the plaintiff at the hearing before the trial court.

The trial court concluded that a zoning authority may deny a special permit application on the basis of general considerations in the local zoning regulations even where the plaintiff's application complies with the detailed technical requirements established in the regulations for the specific proposed use. The trial court also determined that the plaintiff failed to prove that the record did not support the reasons for the denial given by the commission. Finally, the trial court concluded that because the plaintiff presented no evidence of bias or prejudice by the commission, that claim was abandoned. We granted certification for appeal to this court.

"The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992), p. 175; *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* 222 Conn. 607, 612, 610 A.2d 1205 (1992).

The plaintiff contends that the broad legislative statements contained in the general considerations section of the regulations (§ 10.02) do not provide an indepen-

dent basis for denying special permit applications. Instead, the plaintiff asserts, § 10.02 may be used solely to place restrictions on an approved permit and may not be used as an alternative to the standards contained in the technical considerations section of the regulations (§ 9). In essence, the plaintiff argues that once the specific requirements in § 9 are met, the permit must be granted, subject to any limitations that may be placed on that approval under the terms of § 10.02. Thus, according to the plaintiff, § 10.02 cannot serve as the sole basis for denying a special permit application, but can serve as the basis only for attaching conditions to the proposed plan. We do not agree.

" 'The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. (Citations omitted; internal quotation marks omitted.) *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 185, 355 A.2d 91 (1974).' " *Felsman* v. *Zoning Commission,* 31 Conn. App. 674, 677–78, 626 A.2d 825 (1993); *Mobil Oil Corporation* v. *Zoning Commission,* 30 Conn. App. 816, 819, 622 A.2d 1035 (1993).

In its decision, the trial court properly relied on *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 192 A.2d 886 (1963), to support its conclusion that a special permit application may

be denied on the basis of the general considerations alone. In *Cameo,* our Supreme Court upheld the denial of a special permit for a garden apartment under the general considerations of a town's regulations alone. The *Cameo* court concluded that "[t]he commission's power to stipulate such restrictions as appear to it 'to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare' necessarily implies the power to withhold its approval of the proposed use in its entirety if the commission finds that the circumstances warrant that action." Id., 676–77.

The plaintiff attempts to distinguish *Cameo* on the basis of the language of the Middlefield regulations. In *Cameo,* the language of the regulations stated: "Before approving"; id., 674–75 n.1; while in this case the language of § 10.02.01 of the regulations states: "In authorizing." See footnote 1. The plaintiff concedes that the words "Before authorizing" might allow the general considerations to be used as a basis for denying the permit. The plaintiff claims, however, that even if *Cameo* stands for the proposition that a permit may be denied under the general considerations, the use of the words "In authorizing" in § 10.02.01 of the Middlefield regulations is limiting language. That is, the "In authorizing" language limits the commission's use of the general considerations to the attaching of conditions to an approved permit, and it cannot serve as a basis for denying the application. We do not find this argument to be persuasive.

It is well settled that in granting a special permit, an applicant must "satisf[y] *all* conditions imposed by the regulations." (Emphasis added.) *Weigel* v. *Planning & Zoning Commission,* 160 Conn. 239, 246, 278 A.2d 766 (1971). Furthermore, "[o]n more than one occasion, our Supreme Court has held that standards set forth in the zoning regulations for the grant of a special per-

mit may be general in nature." *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals,* 29 Conn. App. 1, 7, 613 A.2d 1358 (1992). Moreover, in *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals,* supra, we specifically noted that the *Cameo* court rejected the limitation on the commission's function urged by the plaintiff here. Id., 9. We cannot conclude that, by the use of the words "in authorizing," the commission in its own regulations chose to surrender the otherwise broad discretion afforded to it by *Cameo* and its progeny. Therefore, the plaintiff's claim that the general health, safety and welfare requirements contained in the regulations must be considered only for the purpose of placing conditions on a special permit and may not be considered in determining whether to deny or grant the permit must fail.

We now consider whether the evidence before the commission adequately supports the reasons given for its decision. "The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it. . . ." (Citations omitted; internal quotation marks omitted.) *Felsman* v. *Zoning Commission,* supra, 678.

The commission gave the following reasons for denying the special permit: (1) the proposed use would not be harmonious with the existing development in the district and would be detrimental to the orderly development of adjacent properties; and (2) the location, size, nature and intensity of the use would create a pedestrian and traffic hazard and would conflict with the traf-

fic characteristics of the surrounding neighborhood. These reasons trace the language of §§ 10.02.01 (2) and 10.02.01 (3) (a) of the regulations. See footnote 1.

In its brief, the plaintiff points to the existence of conflicting evidence in support of its claim that the evidence before the commission did not support its decision. A reviewing court, however, cannot substitute its judgment as to the weight of the evidence for that of the commission. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* 168 Conn. 304, 306, 362 A.2d 1375 (1975). Furthermore, on factual issues material to the reasons for the commission's decision, the credibility of witnesses is within the province of the commission. *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission,* 13 Conn. App. 159, 163, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988). "So long as it appears that an honest judgment has been reasonably and fairly exercised by the commission after full hearing, courts should be cautious about disturbing [the commission's] decision." *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* supra, 677. Our examination of the record reveals that there was adequate evidence to support the commission's reasons for denying the special permit.

The plaintiff's second claim, in its statement of the issues, is that the trial court improperly reviewed the actions of the planning commission by applying the standard of discretion afforded to a zoning authority acting in its legislative capacity as opposed to its administrative capacity. Because the plaintiff failed to brief this argument, we deem it abandoned. *Budlong* v. *Nadeau,* 30 Conn. 61, 64, 619 A.2d 4, cert. denied, 225 Conn. 909, 621 A.2d 290 (1993).[2]

---

[2] Even if the plaintiff had briefed the argument, it would not have changed the outcome of this decision. There is nothing in the trial court's memo-

In its argument on this claim, however, the plaintiff contends instead that the commission, in reviewing and deciding to deny the special permit, acted in a legislative capacity, not in its administrative capacity. Although the plaintiff failed to raise this claim in its statement of the issues, as required by Practice Book §§ 4013 (a) (1) and 4065 (a), we will address it because it has been fully briefed. See *DiSesa* v. *Hickey,* 160 Conn. 250, 262–63, 278 A.2d 785 (1971); *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 28, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985).

"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied." *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* 17 Conn. App. 53, 56, 549 A.2d 1076 (1988). "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process." *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals,* supra, 6.

In this case, the planning commission considered only whether the plaintiff had met the requirements set forth in its previously established special permit regulations. Acting in a legislative capacity involves the creation of policy, not simply the application of previously established policy. If the planning commission had acted in its legislative capacity, it would have created its own policy and not simply applied a previously established

randum of decision to suggest that the trial court applied the broader standard of review afforded an agency acting in its legislative capacity as opposed to that afforded to an agency acting in its administrative capacity.

policy. As there is no evidence of such legislative activity by the planning commission, the plaintiff's second claim must fail.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

DUPONT, C. J., dissenting. I respectfully dissent from the result reached by the court in this case for two reasons. I conclude that under the express language of § 10.02.01 of the Middlefield zoning regulations, the commission could not deny the plaintiff's application for a special permit solely on the basis of a claimed failure to meet the general considerations enumerated in that section, and that the holdings of *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 192 A.2d 886 (1963), and *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals,* 29 Conn. App. 1, 613 A.2d 1358 (1992), do not apply to this case.

"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. . . . It has no discretion to deny the special exception if the regulations and statutes are satisfied." (Citation omitted.) *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* 17 Conn. App. 53, 56, 549 A.2d 1076 (1988).

The function of a special permit is to allow a property owner to use his property in a manner expressly permitted under the zoning regulations, subject to certain conditions necessary to protect the public health, safety, convenience, and surrounding property values. *Mobil Oil Corporation* v. *Zoning Commission,* 30 Conn. App. 816, 819, 622 A.2d 1035 (1993). The regulations permit the use here, and, therefore, a conclusive pre-

sumption arises that the use per se cannot adversely affect the zone in which it is to be conducted. *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 532–33, 577 A.2d 288 (1990). The presumption precludes a commission from denying a special permit because the use does not coincide with the general harmony of the particular zone. A special permit may be denied only for failure to meet specific standards in the regulations, and not for vague or general reasons. See *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 541, 271 A.2d 105 (1970); accord *Kosinski* v. *Lawlor,* 177 Conn. 420, 423, 418 A.2d 66 (1979) (site plan). This is especially important because as we recently noted: "The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." *Felsman* v. *Zoning Commission,* 31 Conn. App. 674, 678, 626 A.2d 825 (1993).

Two recent cases dealing with site plan permits and subdivision approval, *TLC Development, Inc.* v. *Planning & Zoning Commission,* supra, and *Sowin Associates* v. *Planning & Zoning Commission,* 23 Conn. App. 370, 376, 580 A.2d 91 (1990), cert. denied, 216 Conn. 832, 583 A.2d 131 (1991), support the proposition that general considerations should not serve as the basis of a denial of an application. Although *TLC* involved an application for site plan approval, and *Sowin Associates* pertained to subdivision permits, the rationale of their holdings is equally applicable to special permit applications. Special permits, as do site plans and subdivision applications, allow a town to exercise greater control over the development of a specific parcel of land even though the proposed activity is explicitly permitted by the regulations. See *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 353, 232 A.2d 916 (1967). The *TLC* and *Sowin* courts have recognized that general considerations regarding com-

pliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit or site plan and have implicitly recognized that, instead, such approval should be given subject to restrictions or conditions.

In this case, the commission concedes that all of the specific requirements pertaining to special permits for excavation had been fulfilled by the plaintiff. In spite of the compliance with these requirements, the commission denied the permit on the basis that "[t]he proposed use would not be harmonious with existing development in the district and would be detrimental to the orderly development of adjacent properties" and that "[t]he location, size, nature and intensity of the use would create a pedestrian and traffic hazard and would conflict with the traffic characteristics of the surrounding neighborhood." These reasons reflect the general conditions described in § 10.02.01 (2) and (3) (a).

The road, Whisper Wind Road, on which the plaintiff's trucks would pass in order to reach the area of excavation, is fifty feet wide and is an accepted public street in Middlefield. The site of the proposed activity is bound by land owned by the state, the town, a nonprofit conservation corporation and the road. The plaintiff intended to excavate from 7 a.m. to 3:30 p.m., Monday through Friday, and from 7 a.m. to noon on Saturday, with truck trips limited to five per hour. The commission could have imposed more stringent conditions, but I do not believe, given the language of the regulation and the nature of the use, that it could deny the permit altogether.

The language of the regulations in this case is fundamentally different from that of the regulations at issue in *Cameo* and *Connecticut Health Facilities* because it involves a different sequence of events. Here, § 10.02.01 of the regulations, entitled "General Con-

siderations" and a subsection of § 10.02, entitled "Special Permits," provides: "*In authorizing* the issuance of a special permit, the commission shall take into consideration the public health, safety and welfare and *shall prescribe appropriate conditions and safeguards* to insure the accomplishment of the following objectives . . . ." (Emphasis added.) The regulation at issue in *Cameo,* § 20.2, stated: "The Commission may . . . approve the use after making special application of these regulations in harmony with their general intent *by stipulating such restrictions* as appear to the Commission to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare. *Before approving* any special case the Commission shall consider [various enumerated factors]." (Emphasis added.) *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* supra, 675 n.1. The regulation in *Connecticut Health Facilities,* § 19.3.2, provided: "Special Exceptions shall be granted by the reviewing board *only upon a finding* that the proposed use or structure . . . is in accord with the public convenience and welfare after taking into account, where appropriate [various enumerated factors]." (Emphasis added.) *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals,* supra, 5 n.1.

Here, the commission is directed to take into consideration the various factors listed in the regulations *during the course of approving the permit,* rather than *before granting the permit,* or *only upon a finding.* The express language of § 10.02.01 permits the commission only to place conditions on the approval of the plaintiff's application and does not allow it to deny the application altogether if the plaintiff has complied with the specific technical requirements for the permit.

*Cameo* and *Connecticut Health Facilities* do not mandate that a commission may deny a special permit application in toto in all cases. Both cases involve an

application seeking a special permit for a use that would permanently effect a fundamental change in the character of the surrounding neighborhood, namely, the building of garden apartments and the construction of a nursing home and child day care facility, respectively. The use sought in this case would be of a limited duration and, after the completion of the project or the expiration of the time provided for the use, the effect on the surrounding neighborhood would cease. An absolute denial of a special permit should occur only in cases where it is impossible to address all of the concerns of the commission through the use of conditions. This was true in *Cameo* and *Connecticut Health Facilities,* but not in the present case. In my opinion, neither *Cameo* nor *Connecticut Health Facilities* stands for the broad proposition that a zoning commission has the option, in every case, either to grant the permit with restrictions or, alternatively, to deny it entirely, even though the applicant has complied with all technical requirements. These cases merely recognize that there are limited instances where the commission has the authority to deny the application in toto.

A zoning authority should not be able to insulate a denial of a special permit from reversal by an appellate court simply by stating a subjective conclusion such as the use is not in harmony with existing development or that the use would be detrimental because of an increase in traffic congestion. *Daughters of St. Paul* v. *Zoning Board of Appeals,* supra, 68. In those cases where the language of the regulations is similar to that of § 10.02, and the nature of the proposed use will not produce a permanent, fundamental change in the character of the neighborhood, I would hold that a commission does not have discretion to deny the application for a special permit but must grant it, subject to reasonable conditions and restrictions.

Because I believe that the case should be remanded to the commission with direction to grant the special permit, subject to such conditions as the commission deems necessary, I respectfully dissent.