[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Betty Jane Cosenza, appeals the decision of the defendant Zoning Commission of the Town of Essex (the Commission), denying the plaintiff's application for a special exception to convert an existing nursing home into a state-licensed child day care center. The parties have filed briefs and argument was heard by this court on October 7, 1996. For the reasons stated below, the appeal is dismissed.
I. FACTS
On June 5, 1995, pursuant to the Essex Zoning Regulations § 61A.2(A), Charles Belfoure, AIA, on behalf of the plaintiff, filed with the Commission an application for a special exception to convert an existing nursing home to a state-licensed child day care center. (Return of Record [ROR], Item 1.) The subject property is located at 63 South Main Street, Essex, Connecticut, in an area which is currently classified a Rural Residence District (RU District). (ROR, Item 43.)
A public hearing was held on July 17, 1995 and was continued on September 11, 1995.[1] At these hearings, the applicant presented CT Page 6841 the application and submitted the oral presentations of experts on the issues of traffic and surrounding property values. Members of the public were permitted to speak. The applicant was given the opportunity to address the concerns of the citizens present as well as those of Commission members. (ROR, Items 38, 39.) The public hearing was then declared "closed" on September 11, 1995. (ROR, Item 39, p. 152.)
At the October 16, 1995 regular meeting, the Commission unanimously voted to deny the application for a special exception. (ROR, Item 34, p. 2.) The reasons cited for the denial are: "1) the proposed use is not a private school and is therefore not expressly and specifically permitted in the rural residence district as required by Section 40A; 2) the traffic and noise generated by a use of the magnitude proposed would adversely affect the enjoyment, usefulness and value of the premises in the general neighborhood in violation of Section 13OA.3; 3) the proposed use will adversely affect the pattern, flow, intensity and character of traffic in the streets and produce unsafe or inconvenient traffic congestion in violation of Section 13OA.4; and 4) the lot is not large enough to support four family dwelling units and the use proposed." (ROR, Item 34, p. 2.) Notice of the Commission's decision was published in the Middletown Press on October 21, 1995. (ROR, Item 36.)
On November 29, 1995, after timely service of process, the plaintiff filed the present appeal pursuant to General Statutes § 8-8, requesting that this court sustain the appeal and issue an order directing the Commission to approve the application for a special exception. The plaintiff claims that, in denying the application, the Commission acted illegally, arbitrarily and in abuse of its discretion. (Plaintiff's Appeal.)
On February 5, 1996, the Commission filed its answer. The, plaintiff filed her initial brief on April 10, 1996; the Commission's brief was filed on May 7, 1996.[2] Following the hearing on this matter, supplemental briefs were submitted by the parties on October 17, 1996. This court has carefully considered the testimony and evidence contained in the entire record, the parties' briefs and their oral arguments.
II. Jurisdiction
Appeals from a decision of a zoning commission may be taken to the superior court. General Statutes § 8-8 (b). "Appeals to courts CT Page 6842 from administrative agencies exist only under statutory authority . . . . A statutory right to appeal must be taken advantage of only by strict compliance with the statutory provisions by which it is created . . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal . . . ." (Citations omitted; internal quotations marks omitted.) Office of ConsumerCounsel v. Department of Public Utility Control, 234 Conn. 624,640, 662 A.2d 1251 (1995).
A. Aggrievement
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planningand Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991)DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,588 A.2d 244 (1991). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally, protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Connecticut Resources Recovery Authorityv. Planning Zoning Commission, 225 Conn. 731, 739 n. 12,626 A.2d 705 (1993). An owner of property which forms the subject matter of, the application to the commission is aggrieved. Winchester WoodsAssociates v. Planning and Zoning Commission, supra, 219 Conn. 308.
At trial, the plaintiff testified that she is the owner of the subject property. Accordingly, this court finds that the plaintiff is aggrieved.
B. Timeliness and Service of Process
General Statutes § 8-8 (b) requires that an appeal from a decision of a zoning commission "shall be commenced by service of process [on the chairperson of the board and the clerk of the municipality] within fifteen days from the date the notice of the decision was published. . . ." See General Statutes §§ 8-8 (b), (e) and (f).
The Commission published notice of its decision in theMiddletown Press on October 21, 1995. (ROR, Item 36.) This appeal was served on Chairperson Gregory Ellis and on Betty J. Gaudenzi, Town Clerk, on November 2, 1995.[3] (Sheriff's Return of Service.) Accordingly, the court also finds that the appeal was timely served on the appropriate parties.
Consequently, since this court has found that the plaintiff is CT Page 6843 aggrieved and that this appeal was timely served on the proper parties, this court has jurisdiction.
III. Scope of Review
"Upon appeal, the trial court reviews the record before the [administrative agency] to determine whether it has acted fairly or with proper motives or upon valid reasons . . . ." (Internal quotation marks omitted.) Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991). When the decision of an administrative agency is challenged, "[t]he burden of proof is on the plaintiff to demonstrate that the [commission] acted improperly." Id. "In applying the law to the facts of a particular case, the [commission] is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Id. "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record . . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached . . . . The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." (Citations omitted; Internal quotation marks omitted.) PropertyGroup, Inc. v. Planning Zoning Commission, 226 Conn. 684, 697,628 A.2d 1277 (1993).
IV. Discussion
A. Conditions Subject to Which a Special Exception Shall be Granted
In general, a special permit or special exception "allows a use which is generally compatible with the zoning district but requires special attention as to its location and method of operation in order to keep it consistent with uses permitted as of right in the district." 9 Connecticut Practice, R. Fuller, Land Use Law and Practice (1993) § 2.2, p. 17. "The proposed use . . . must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." WhisperWind Development Corporation v. Planning Zoning Commission,32 Conn. App. 515, 520, 630 A.2d 108 (1993).
"When the commission acts on a special permit or site plan, it acts in an administrative capacity and its function is to determine CT Page 6844 whether the applicant's proposed use is one that satisfies the standards set forth in existing regulations and statutes."Cybulski v. Planning Zoning Commission, 43 Conn. App. 105, 110,___ A.2d ___ (1996). "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special [exception] process." (Internal quotation marks omitted.) Whisper Wind Development Corporation v. Planning Zoning Commission, supra, 32 Conn. App. 524.
There is no specific provision for day care centers in the Essex Zoning Regulations. The plaintiff submitted her application pursuant to § 61A.2(A). Section 61A.2(A) permits as a special principal use in an RU District any use permitted in a Village Residence District (VR District) pursuant to § 60A.2. Section 60A.2(A) permits private schools in a VR District by special exception granted subject to the conditions specified in § 130A. Therefore, since a private school is a special principle use in a VR District when a special exception is granted pursuant to the conditions specified in § 130A., according to § 61A.2(A), a private school is also a special principle use in an RU District when a special exception is granted subject to the conditions in § 130A.[4]
The Commission, in their second and third reasons for denying the application, cited violations of two subsections of § 130A. which provide "conditions subject to which a Special Exception shall be granted when reference is made in these Regulations to this Section 130 . . . ." Since the Commission cited violations of only subsections 130A.3[5] and 130A.4,[6] in its denial of the application, this court will confine its review of the record to evidence relating to these subsections.
B. Basis for the Commission's Denial
The Commission's third reason for denying the application states that "the proposed use will adversely affect the pattern, flow, intensity and character of traffic in the streets and produce unsafe or inconvenient traffic congestion in violation of § 130A.4." (ROR, Item 34, p. 2.). This court finds that the record reasonably supports the Commission's decision in this regard.
The record reveals the following evidence, as provided by the plaintiff's own traffic expert. South Main Street is a two lane, road which is twenty-five feet wide. (ROR, Item 13, p. 1.) It currently accommodates approximately 120 cars between 8:00 a.m. and CT Page 6845 9:00 a.m. and 190 cars between 4:30 p. m. and 5:30 p. m. (ROR, Item, 13, p. 2.)
South Main Street intersects Route 154, a busy, two lane, State highway. Route 154 accommodates a daily average of 4800 cars, 450 of which travel during the peak hour of 5:00 p. m. to 6:00 p. m. (ROR, Item 7, p. 1; Item 18, Table A-2.)
The sole driveway, both the entry and the exit from the proposed use, does not have the benefit of signal lights at its intersection with South Main Street, nor does the intersection of South Main Street and Route 154. (ROR, Item 38, p. 5; Item 18, p. 1.)
Currently, the nursing home generates 13 car trips[7] during the morning peak hours (8:00 a.m. to 9:00 a.m.) and 2 car trips during the afternoon peak hours (4:30 p. m. to 5:30 p. m.). (ROR, Item 13, p. 2.) There are 26 staff members employed at any given time at the nursing home. (ROR, Item 7, p. 2.) The proposed use, on the other hand, will generate on a daily basis 61-81 cars[8] between the hours of 7:00 a.m. and 9:00 a.m. and 42-61 cars between 4:30 p. m. and 6:00 p. m. based on an enrollment of 98 children. (ROR, Item 1, Traffic Study.) The day care center will employ 17 staff members at any one time. (ROR, Item 13, p. 2.)
Essex residents, particularly neighboring residents voiced pertinent concerns to the Commission regarding other factors beyond the sheer additional volume of cars which will affect traffic pattern, flow, intensity, character and congestion. Residents noted that there is regular ambulance and police traffic to the nearby Essex Rest Home. (ROR, Item 38, p. 28.) Next, the existence of school, community and senior citizens' bus stops in the vicinity of the proposed use were brought to the Commission's attention. (ROR, Item 38, p. 31, 34, 38, 86; Item 39, p. 122, 123.) Other residents pointed out that South Main Street was not created, nor has it been sufficiently improved, to handle this proposed volume of traffic. (ROR, Item 38, p. 34, 86.) Finally, some residents voiced concerns that the traffic study was done during the summer months when traffic levels in the area are generally lighter than during the school year. (ROR, Item 39, p. 123-24.)
Commissioner Lazar specifically expressed concern regarding cars crossing traffic in order to enter and exit the proposed use. He suggested that some type of "right turn only" sign or a yellow CT Page 6846 light might be in order. (ROR, Item 39, p. 121.) Finally, the Essex Planning Commission, though generally in favor of the application, did indicate that it had "concerns regarding traffic . . . [d]ue to the sensitive nature of the location. . . ." (ROR, Item 16.) "A reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . Furthermore, on factual issues material to the reasons for the commission's decision, the credibility of witnesses is within the province of the commission." (Citation omitted.)Whisper Wind Development Corporation v. Planning ZoningCommission, supra, 32 Conn. App. 523.
With these two principles in mind, this court finds that the evidence on the record reasonably supports the Commission's third reason for denying the application for a special exception. The evidence supports the Commission's determination that the proposed use will generate a sufficient amount of additional traffic at this location to constitute an adverse affect on the "pattern, flow, intensity and character of the traffic in the streets and produce unsafe or inconvenient congestion." (Regulations § 130A.4.)
Furthermore, this court does not agree with the plaintiff that the comments and concerns of residents as to this issue are based; on groundless fears. Certainly, it is the neighboring residents who best understand the current traffic conditions. They are also in the best position to apply the evidence presented regarding the impact on traffic of the proposed use to give the Commission a reliable view of the traffic impact of the proposed use. Also, it is for the Commission to determine the weight to be afforded such testimony.
As a final point, this court declines to determine whether or not substantial evidence exists in the record to support the; Commission's first reason for denying the application which states that "the proposed use is not a private school. . . ." (ROR, Item 34, p. 2.) Likewise, this court will not determine whether or not a day care center is a private school for the purposes of the Regulations. It is noted that there was some debate at the public hearings regarding this issue, but the debate was foreclosed by the Chairperson.[9] Furthermore, two of the remaining reasons given by the Commission specifically cite § 130A. The provisions of § 130A. would only apply if § 61A.2 were, in fact, the correct section under which to apply for this special exception.[10]
It is a well-settled principle of administrative law that if CT Page 6847 any one reason is sufficient to support the Commission's denial, the court must uphold the Commission's decision. Frito-Lay, Inc v.Planning and Zoning Commission of the Town of Killingly, supra,206 Conn. 570. Consequently, since the court's review of the record supports a finding that the denial based on a violation of § 130A.41 was reasonably supported by the record, this court need not consider the remaining three reasons cited by the Commission in support of their denial of the plaintiff's application for a special exception.
VII. Conclusion
In conclusion, this court finds that the Commission's denial of the plaintiff's application for a special exception was not unreasonable, arbitrary or illegal. Instead, its decision is reasonably supported by the record.
Accordingly, for the foregoing reasons, the plaintiff's appeal is dismissed.
BY THE COURT:
FOLEY, J.