[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5627
The plaintiff, Lisa I. DiJon a/k/a Lisa I. Doyle, has appealed the decision of the defendant Planning and Zoning Commission of the Town of Litchfield granting a special exception to the Town of Litchfield to use property located adjacent to South Plains Road for recreational purposes. The plaintiff owns property within 100 feet of the property and is therefore aggrieved. Connecticut General Statutes § 8-8(1).
The application submitted by the Town of Litchfield is to use an existing hay field which is essentially flat flood plain (R-8), as three athletic fields for use by children for soccer, field hockey and in the winter ice skating. (R-1.a.). The Town of Litchfield is a lessee of this property, and the use is exclusively for playing fields for children under the control of the schools, the Litchfield Youth Soccer League, and the Town Parks and Recreation Department. (R-1.a. and 1.b.). Such a public park and playground use, in the opinion of the Town Planner Town McGowan, is a permitted use under Article IV Section 4 of the Litchfield.
The application submitted by the Town of Litchfield is to use an existing hay field which is essentially flat flood plain (R-8), as three athletic fields for use by children for soccer, field hockey and in the winter ice skating. (R-1.a.)
The Town of Litchfield filed a special exception application on which a public hearing was held. Because this is a Town Project, the Town Engineer prepared the plans and the First Selectman filed the application. Soil Scientists were hired for Inland Wetland approvals (R-6) and for the hearing held. Since no structures were to be built, the physical changes requested by the application to the area were limited to: putting gravel in an area along the road for parking, putting a timber rail fence to separate the field from parking, and grading and seeding to make the already essentially flat hayfield into flat playing fields with grass. (R-8).
At the public hearing, the Superintendent of Schools, the President of the Litchfield Soccer Club and the Parks and Recreation official testified on the desperate shortage of playing fields for Litchfield children in school and youth league programs. (R-20, pages 12-14, 16). CT Page 5628
"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied." Daughtersof St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53,56, 549 A.2d 1076 (1988). "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. Connecticut HealthFacilities, Inc. v. Zoning Board of Appeals, 29 Conn. App. 1, 6,613 A.2d 1358 (1992).
"In fact, `an agency is not required to state all its determinations on the record so long as the record provides an adequate basis for the agency's decision.' Samperi v. InlandWetlands Agency, 226 Conn. 579, 590-91, 628 A.2d 1286 (1993).
It is well settled that the court will search the record to see if the board's decision was reasonably supported by the record, "in which case the court shall not substitute its judgment for that of the Commission." Roraback v. Planning Zoning Commission, 32 Conn. App. 409, 412, 628 A.2d 1350 (1993).
 I
The Plaintiff's first claim (Plaintiff's Brief page 13) is that Article VIII, Paragraph 3 of the Zoning Regulations requires a site plan, unless waived, but that the Commission did not waive the requirement. The brief then lists numerous site plan specifications which the site plan is alleged to be missing. (Plaintiff's Brief pages 14-18).
 Article VIII Paragraph 3 states: "To permit proper review, the Commission shall, in accordance with Article XI, Section 1 require that a Site Plan be submitted, and any other information deemed necessary to determine if the use is in harmony with the intent of the regulation, and the character of the area in which it is located. The requirement for a Site Plan may be waived by a Commission vote, if insignificant changes or no changes in site conditions are proposed."
In this case a search of the record reveals insignificant or no changes to the site. There are no lights, no structures; only CT Page 5629 a gravel parking area with a timber fence around it with one or two port-a-potties. The topography and drainage remain essentially unchanged. It's a field now and "[t]he only difference would be that it would have children playing on it." (R-20, lines 70-72, 93-95, 117, 474-476). The action of the Commission voting to approve the application prepared by its own Town Engineer, together with the language of the motion to approve the application "because it meets the regulations" provide reasonable and substantial support for finding that the Commission voted and waived the requirements for submitting a full blown site plan, as authorized in Article VIII, Paragraph 3 of the Regulations. (R-20).
The Plaintiff, also claims various deficiencies relating to site plan specifications under Article IX, Section 1, of the Regulations; none of which apply if the Commission in fact waived a full blown site plan. Nevertheless, the following points are made seriatum with regard to the Plaintiff's claims.
Claim 1: Plan not certified correct by Registered Land Surveyor licensed to practice in Connecticut.
Response: Town Engineer Ralph Zimbouski prepared it and he is the expert who advises the Commission.
Claim 2: Site plan not certified by an engineer licensed to practice in Connecticut.
Response: Town Engineer Ralph Zimbouski is an engineer licensed in Connecticut.
Claim 3: Plan doesn't show detail of adjacent properties as they relate to the proposed development to the neighborhood and to the street pattern within 500 feet.
Response: This property is presently a field and will remain a field. The adjacent properties have little or no altered relation to the proposed development of the neighborhood, as no development is proposed as that term is usually meant, for location and construction of buildings, and there is absolutely no change to the street pattern.
Claim 4: Didn't show that proper and adequate provision for vehicular traffic, service roads, control of entrance and exit to the highway, parking and loading. CT Page 5630
Response: The apron and entrance to the site together with the location and size and shape of the parking lot are shown. The Town Engineer gave extensive testimony on site lines and traffic, and use was shown to be further subject to DOT approval for any curb cuts. The Town Engineer presented the plan with 64 parking spaces and the Commission heard testimony and no doubt have personal knowledge of what is adequate for soccer field parking. There are no regulations for such recreational parking so the Commission could conclude that parking was adequate.
Claim 5: No showing of proper and adequate provision for safe water supply.
Response: Record shows that no drinking water would be provided at the site. (R-20, lines 1014-1019).
Claim 6: No provisions for the protection of existing residences through buffering.
Response: There would be landscaping to camouflage the portable toilets (R-20, lines 298-305) and the only item to be built above ground level is a timber fence around the parking lot.
Claim 7: The plan does not show adequate sewage disposal.
Response: Either one or two port-a-potties are the only sewage at the site and serve to demonstrate how this minimalist use of the property from hayfields to playing fields relates insignificantly to the normal site plan requirements for constructing buildings and providing sewage services at a site.
Claim 8: No showing of wetlands private and public water drinking supplies boundaries of Wellfield Zones and well fuel protection zones and aquifer recharge areas.
Response: Inapplicable to this type of application where no buildings are going to be constructed or fuel tanks are going to be housed.
Furthermore, the regulations state that the plan should include such information but does not require such information and this is well within the discretion of the Commission as fact finder. CT Page 5631
In summary, a search of the record shows that the commission followed its regulations and the record amply supports the conclusion that the Commission waived the specific site plan requirements for the evaluation of this site under the Special Exception Regulations because of the insignificant nature of the activity proposed to take place. The record reasonably and substantially supports the Commission's conclusions that the application complies with the applicable regulations and therefore the Commission did not act unreasonably, arbitrarily or illegally. Paige v. Town Plan Zoning Commission.,35 Conn. App. 646, 659, 646 A.2d 277 (1994).
 II
The Plaintiff's next claim is that there was no evidence that the Commission considered the factors enumerated in the Special Exception regulations, Article VIII, paragraph 4, and that it did not record its findings in its meeting record.
Although the Commission did not state those considerations in its final motion, the record is replete with consideration of those factors and the following is a partial listing of locations where testimony and documents can be found and for the sake of brevity, a summary of that evidence listed in the same order as the Regulations. Article VIII: Subparagraph 4.a. "The need for the proposed use or activity in the proposed location." The record has extensive testimony on the great need for playing fields, the already tax exempt status of the land so no tax dollars are lost, the flatness of the site and it's close proximity to schools compared to other sites. (See R-20 transcript, lines 55-65, 360-361, 401-405, 449-451, 454-455, 479-482, 487-494, 499-504, 512-515, 518-523, 528-535, 1110-1115).
Article VIII: Subparagraph 4.b. "The existing and probable future character of the neighborhood in which the use is located." The property is about 1.3 miles from the center of town. It is currently a hayfield to be sued as soccer fields, field hockey fields and in the winter an ice skating pond. The topography and drainage will not significantly change nor will the views of this residential area, as it will essentially remain fields. (See R-20 transcript, lines 26-30, 61-64, 473-476).
Article VIII: Subparagraph 4.c. "Creation of harmonious relationship between proposed and existing buildings in the vicinity." No buildings are going to be built on the site, but rather only a fence and gravel parking area and, as needed, two CT Page 5632 port-a-potties will be brought to the site. (See R-20, lines 61-65, 70-75, 473-476. See R-7 and 8 site plan). Public playgrounds use permitted in all zones. Article IV Section 7 (R-22).
Article VIII: Subparagraph 4.e. "The provisions for safe and adequate parking and impact to the parking location, design on adjoining properties." The parking area will be simply changed from flat hayfield area to flat graveled area for 64 cars. Buses would be able to make K-turns and no other structures other than a fence around the parking lot would be built. (See R-7 and 8, R-20, lines 33-44, 75-76, 78, 85-92, 919).
Article VIII: Subparagraph 4.f. "Availability and adequacy of public water and sewer facilities for the proposed use and possible overloading of the sewer and water systems." Only one or two portable toilets will be used on this site and no drinking water would be supplied. Therefore, no use is being made of the water or sewer systems. This demonstrates how insignificant this use is in comparison to the usual special exception applications. (See R-20, lines 93-95, 111-116, 98 311, 1014-1019).
 III
The Plaintiff has claimed the Commission abused its discretion in two ways: by disregarding evidence that the surface and ground waters at the site were contaminated by leachate; and by approving the application without any evidence as to the traffic that would be generated or the parking that was required. Neither contention is supported by the facts on the record, or the law.
The Commission acted in an administrative capacity considering this application for a special exception. Whisper Wind Dev. Corp.v. Planning Zoning Commission, 32 Conn. App. 515, 524,630 A.2d 108 (1993). The Commission has "discretion to resolve debatable questions of fact, and on appeal the issue is whether the agency's decision on factual questions is reasonably supported by the record, in which case the court will not substitute its judgment for that of the Commission." Roraback v. Planning Zoning Commission, supra,32 Conn. App. 412.
The Plaintiff's claim that the Commission disregarded evidence of surface and ground water pollution is predicated on the zoning regulations' general concerns related to public health, safety and welfare, rather than a specific special exception regulation. (Plaintiff's brief page 21). The Plaintiff's brief CT Page 5633 quotes selectively and extensively from two items submitted by the Plaintiff's husband, Timothy Doyle. One of these items is a nine year old Bridgeport Hydraulic Company, Litchfield Branch Supply Report. The other is a United States EPA letter to Congressman Nancy Johnson written at the request of the Plaintiff's husband, Timothy Doyle. The subject of that letter is not this site, but the closed Town landfill which the Plaintiff has claimed is polluting her property.
The record has numerous references which show that the Commission considered the claims of surface water pollution. As well, the record is barren of any evidence that such pollution exists on this site. The Town Engineer, Ralph J. Zimbouski, visited the site and prepared plans (R-8), had soil scientists prepare a report on the site (R-6), and provided testimony at the hearing. The First Selectman in response to commissioner Goldring's question testified that the drainage would remain just as it always has, including the Bantam River flooding the field. (R-20, page 4-5, lines 117-136). The Town engineer agreed drainage would remain the same. (R-20, page 5, lines 151-152). Further, first Selectman Craig Miner gave testimony, in response to Chairman Carol Bramley's question, that no surface water testing has been done on this property, but that results of groundwater and surface water testing near the town landfill did not indicate surface water pollution in those areas which are closer to the landfill. (R-20, page 26-27, lines 779-811). There is no evidence in the record that it is even possible for surface water to flow from the closed landfill, over the terrain on the east side of South Plains, then across South Plains road onto the field. Neither the Plaintiff nor anyone else presented testimony, expert opinion or otherwise, that surface water pollutants exist on this site or that even if it did that it would be a danger to the public for the uses indicated.
The Plaintiff's other claim that the Commission "abused its discretion by approving the application without any evidence in the record as to the traffic that would be generated by the proposed use, or the parking that is required on the site" is without merit both on the facts, and the law. The law has "permitted lay members of commission to rely on their personal knowledge, considering matters readily within their competence, such as traffic, congestion and street safety". Feinson v.Conservation Commission, 180 Conn. 421, 427, 429 A.2d 910 (1980). The Commission heard testimony from Darcy Parker, President of the Litchfield Soccer Club, on the number of children expected to CT Page 5634 use the fields (R-20, pages 14-15, lines 430-450).
The Plan shows three fields (R-8). The plan was developed by the Town Engineer Ralph Zimbouski, the same person who is the expert consultant to the Commission on matters relating to roads and traffic. He testified as to sight lines for the entrance stating, "I moved it to this end of the property in recognition that I have an increased sight line at this location exiting the property, on the straight part of the road, and I also have it less vertical, less challenge to the sight line." (R-20, page 25, lines 747-750). He also stated "I have kept the separation distance from my driveway from the intersection so as to make-that there would be a-a decision making process. Ideally, you want to keep a minimum of a fifty foot separation between them." (R-20, page 25, lines 753-756). The Town Engineer also made clear that the town had to "have a permit for DOT for the cub cut" (R-20, page 26, line 773).
Contrary to the Plaintiff's claim that the Town Engineer did not answer the Town Planner's question about a safe stopping distance (Plaintiff's Brief page 20), the Town Engineer stated "Now, if you are talking for the vehicles that you know, are coming from Little Pitch Road, they are not going to be able to accelerate. As far as meeting the site (sic) distances on South Plains, I am in excess of those requirements". (R-20, pages 25-26, lines 768-771). Camp Dutton Road was also in excess of two hundred feet. (R-20, page 25, lines 762-765). Also First Selectman Craig Miner located Camp Dutton Road around three hundred feet from this site. (R-20, page 8, lines 228-229).
The Plaintiff's brief also argued that Article VIII Subparagraph 4d (Plaintiff's Brief, page 27, misstating 4d as 4b) was not satisfied and that the Commission did not make a finding on the traffic. The Town Engineer's testimony set forth above, coupled with the plan submitted (R-8) and the motion by Commissioner Bill Wilson "to approve the application with the understanding that DOT permits and permits from the Army Corp of Engineers will be obtained, and (R-21, Minutes of Meeting) substantially support the decision of the Commissioner and serve as the findings called for in the regulations.
"The Commission enjoys reasonable discretion in construing the regulation it is charged with enforcing. Spero v. ZoningBoard of Appeals, 217 Conn. 435, 586 A.2d 540 (1991). [U]pon appeal, the trial court reviews the record before the CT Page 5635 [commission] to determine whether it has acted fairly or with proper motives or upon valid reasons." Paige v. Town Plan Zoning Commission, supra, 35 Conn. App. 646. "The burden of proof to demonstrate that the [commission] acted improperly is upon the [plaintiff]. Horvath v. Zoning Board of Appeals, 163 Conn. 609,316 A.2d 418 (1972).
The evidence put into the record by Litchfield's own engineer, who gave lengthy testimony on traffic and how to handle it, and who did not report that access to the site or the impact of traffic led to an inadequate compliance with the regulations, provides a basis for the court to conclude that the commission found that those provisions for traffic and access met the requirements of the regulations. That is what the motion to approve "because it meets its regulations" stated. "Connecticut Courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process."Whisper Wind Dev. Corp. v. Planning Zoning Commission, supra,32 Conn. App. 524. The decision of the Commission is reasonable and substantially supported by the record.
 IV
Finally, the appeal is based on a challenge to the requirement of notice. The Town of Litchfield published notice of this special exception application for municipal use of a field for children's soccer fields twice, once in the Waterbury Republican on July 22, 1997 (R-14) and once in the Litchfield Enquirer, on August 1, 1997 (R-15), which respectively were within the Connecticut General Statutes 5-3(c) window of no less than 10 days and no more than 15 days before the hearing, and of no less than 2 days before the hearing, at least 2 days apart. The notices were identical and read,
 "Special Exception application for outdoor recreational use submitted by the Town of Litchfield, property on South Plains, Map 210, Block 50. Lot 8. At this hearing interested persons may appear and be heard and written communication will be received. Copies of the applications are on file in the Land Use Office of the Town of Litchfield at the Town Hall Annex, 80 Doyle Road, Bantam, Connecticut. Martin J. Connor, Land Use Administrator"
Notice to owners within 150' of the site, including the CT Page 5636 Plaintiff, was given by certified mail.
The public notice requirement has been interpreted by the Connecticut Supreme Court in a common sense manner. Notice is adequate if it "fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing." Shrobar v. Jensen, 158 Conn. 202, 207, 257 A.2d 806
(1969).
The Connecticut Supreme Court cases regarding notice do not delineate a bright line test for adequacy of notice based on each word or item. Rather, they show that the court is concerned with the notice in its entirety. It is in this contest that the Connecticut Supreme Court in Koepke v. Zoning Board of Appeals,223 Conn. 171, upheld the appellate court decision in favor of the Plaintiff, in Koepke v. Zoning Board of Appeals,25 Conn. App. 611, where the notice was so lacking in information that the court said it was "remarkable for the information that it did not contain."
In Koepke, the notice did not include the subject matter, which this case does. It did not include the location of property, which this case does. As well, the notice did not include the proposed use, which this case does. The only similarity between this case and Koepke is that neither notice named the owner. Koepke, is a case in which the notice had so little information that the court concluded the public would have no way of knowing or suspecting of the place or subject matter to be heard. Koepke is factually distinguishable from the instant case because in this case the notice clearly states the subject matter by stating "special exception application for outdoor recreational use submitted by the Town of Litchfield", which is the same language used in the zoning regulations at Article V Section 22 (R-22) which is "recreational use (outdoors)." In this case the location of the property is also adequately identified by "South Plains, Map 212 Block 50 Lot 8", which is not only the widely known name of South Plains Road, but also the Assessors map, block, and specific lot.
Viewed in its entirety, with all the information together and in context, and viewed from the standpoint of the public reading the notice, the notice clearly apprises the public that a hearing is going to take place for a special exception for "outdoor recreation use" on "South Plains" Road and that the precise CT Page 5637 location is shown on assessor's "Map 210, Bock 50, Lot 8".
The common sense approach of viewing the notice in its entirety, without placing form over substance, indicates that this notice apprises the public that an outdoors recreational use is contemplated by the Town of Litchfield for the specific site on South Plains Road shown on Assessor's Map 210, Block 50, Lot 8 and points the public to the source of more information if desired. The notice fairly and sufficiently apprised the public of the hearing.
For the reasons stated, the appeal is dismissed.
BY THE COURT HON. WALTER M. P. PICKETT, JR. JUDGE TRIAL REFEREE