[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF APPEAL
The plaintiffs Catherine Blakeman and Huntington Homes, Inc., appeal from the decision of the defendant, the Shelton planning and zoning commission (commission), approving eighteen condominium units instead of the twenty-four units requested in Blakeman's application for a modification of the detailed development plans for planned development district (PDD) #14, located on River Road in Shelton, Connecticut. The plaintiffs bring this appeal pursuant to General Statutes § 8-8.
 II FACTS
On December 6, 1988, the commission approved the basic development plans submitted by Blakeman in conjunction with an application for the establishment of a PDD on a 3.9 acre parcel of land on River Road in Shelton, Connecticut. The basic plans called for twenty-four condominium units. (ROR, Item K, p. 37.) On August 13, 1993, the detailed development plans for the PDD were filed and the subject property was thereafter designated a PDD on the town's official zoning map.[1] Section 34.11 of the Shelton zoning regulations provides, however, that "[t]he development authorized by the Commission shall be completed. within five (5) years from the effective date of the District, except that the Commission may extend the time for completion for one (1) year periods after public hearings for good cause demonstrated to the satisfaction of the Commission; otherwise the Commission shall be deemed authorized by the owner or owners of land within the District to amend these Regulations and the. Zoning Map, deleting the Planned Development District and establishing for such land the provisions of another zoning district." CT Page 11888
Because more than five years passed from the effective date of the subject PDD without completion of the project, Blakeman, on August 1, 2000, applied to the commission for a modification of the 1993 detailed development plans. (ROR, Item A.) The revised detailed development plans submitted with the application were substantially similar to the plans submitted in 1993 except for some building design and architectural changes.[2] (ROR, Item K, p. 37)
Public hearings were held on the application on September 26, 2000, and on October 10, 2000. On January 16, 2001, the commission voted to approve the application subject to several conditions, which included a reduction of the number of dwelling units from twenty-four to eighteen. (ROR, Item F, p. 3.)
Presently before the court is the plaintiffs' appeal of that part of the decision requiring Blakeman to reduce the number of units. As grounds for the appeal, the plaintiffs allege that the commission acted illegally, arbitrarily and in abuse of its discretion in conditioning approval of the plaintiffs' application on a reduction in the number of units. Specifically, the plaintiffs allege that the subject property is in a PDD zone which permits condominium development and which has already been approved for twenty-four condominium units. (Appeal, ¶ 12(a).) The plaintiffs further allege that § 34.11 of the Shelton zoning regulations is illegal in that the establishment of a PDD constitutes a zone change and there is no authority for placing an expiration date on a zone change. (Appeal, ¶ 12(c).) The plaintiffs also allege that the commission acted arbitrarily and unreasonably because the commission's stated reasons for ordering the plaintiffs to reduce the number of condominium units from twenty-four to eighteen is not supported by the evidence in the record. (Appeal, ¶¶ 12(f), (h), (i) and (k).) Specifically, the plaintiffs allege that there was no evidence upon which the commission could find that a reduction in the number of units from twenty-four to eighteen would facilitate storm water management. (Appeal, ¶ 12(f).) Finally, the plaintiffs allege that the commission violated § 34.6[3] of the town's zoning regulations by failing to request and present, prior to or at the public hearing, the statements of the town fire marshal and by using the fire chief's input, obtained after the public hearing, as a basis for reducing the number of condominium units. (Appeal, ¶ 2(g).)
 III JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of CT Page 11889 a zoning commission to the Superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
 A Aggrievement
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citations omitted; internal quotation marks omitted.) Harris v. ZoningCommission, 259 Conn. 402, 409, 788 A.2d 1239 (2002). The burden of proving aggrievement rests with the plaintiff. Quarry Knoll II Corp. v.Planning Zoning Commission, 256 Conn. 674, 701, 780 A.2d 1 (2001). "Aggrievement falls within two broad categories, classical and statutory." Cole v. Planning Zoning Commission, 30 Conn. App. 511,514, 620 A.2d 1324 (1993), aff'd on remand, 40 Conn. App. 501, 671 A.2d 844
(1996); see also Zoning Board v. Planning Zoning Commission,27 Conn. App. 297, 300, 605 A.2d 885 (1992). "The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific persona], and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Harris v. ZoningCommission, supra, 410. On the other hand, "[s]tatutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." Lewis v. Planning ZoningCommission, 62 Conn. App. 284, 288, 771 A.2d 167 (2001) "In the case of a decision by a . . . planning and zoning commission . . . `aggrieved person' includes any person owning land that abuts or is within radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1).
The court finds that Blakeman, as owner of the subject property, is statutorily aggrieved by the commission's decision and, as such, is entitled to maintain this appeal. At the time of trial, this court found CT Page 11890 that Huntington Homes, Inc., as the applicant/developer of the subject PDD, was also aggrieved and thus also entitled to maintain this appeal.
 B Timeliness an Service of Process
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the commission's decision was published in the Connecticut Post on January 25, 2001. (ROR, Item G-4.) The present appeal was commenced by service of process upon Joseph Pagliaro, chairman of the Shelton planning and zoning commission, and upon Jane Barrese, assisant city clerk of the city of Shelton, on February 2, 2001. (Marshal's Return.) Accordingly, the court finds that the plaintiffs commenced this appeal in a timely fashion upon the proper parties.
 IV SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089
(1993), cert. denied, 510 U.S. 1104, 114 S.Ct. 1190, 127 L.Ed.2d 540
(1993). "The burden of proof is on the plaintiff to demonstrate that the commission acted improperly," Spero v. Board of Appeals, 217 Conn. 435,440, 586 A.2d 590 (1991), "When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision." Harris v. Zoning Commission, supra, 259 Conn. 420. "The reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." Id., 515. Where an administrative agency gives reasons for the denial of a land use application, the denial must be upheld if even CT Page 11891 one of the reasons given is sufficient to support it. Frito-Lay, Inc.v. Planning and Zoning Commission, 206 Conn. 554, 576, 538 A.2d 1039
(1988); see also Burnham v. Planning Zoning Commission,189 Conn. 261, 265, 455 A.2d 339 (1983) (zone change); Goldberg v. ZoningCommission, 173 Conn. 23, 26, 376 A.2d 385 (1977) (site plan).
 V DISCUSSION A. Whether Shelton Zoning Regs. § 34.11 Creates an Illegal Conditional Zone
The plaintiff first argue that § 34.11 is illegal because a PDD is a zone, and a zone cannot terminate upon the expiration of a specified period of time. (Plaintiffs' Brief, pp. 8-9.) As support for their argument, the plaintiffs assert that the basic development plans approved by the commission in 1988 constitute the standards for the subject zone. (Plaintiffs' Brief, pp. 10-11.) The plaintiffs reason that if the right to develop the PDD in accordance with the detailed development plans expires after five years, then the standards embodied in the basic development plans expire as well, leaving an illegal zone with no standards. (Plaintiff's Brief, p. 10.)
The defendant counters that § 34.11 does not authorize the establishment of conditional zones but, rather, authorizes the commission to rezone a PDD in the event that construction is not completed within five years, (Defendant's Brief, p. 4.) The defendant further argues that placing time limitations on site plans and subdivisions is a common and accepted practice under Connecticut law. Defendant's brief, pp. 4-5.)
Section 34.11 of the town's zoning regulations provides, in part, that "[t]he development authorized by the commission shall be completed within five (5) years from the effective date of the. District . . . otherwise the Commission shall be deemed authorized by the owner or owners of land within the District to amend these Regulations and the Zoning Map, deleting the Planned Development District and establishing for such land the provisions of another zoning district." Contrary to the plaintiffs' assertion, a planned development district does not simply expire after five years if the development is incomplete. Instead, § 34.11 authorizes the commission, in its discretion, to delete the PDD and establish some other zone in its place. Although the commission in the present action did not elect to proceed in such fashion, it would have been well within its authority to do so, subject only to the limitations prescribed by General Statutes § 8-3[4] and § 51.1[5] of the CT Page 11892 town's zoning regulations.
 B Whether the Commission Abused its Discretion in Approving the Plaintiffs' Application with Modifications
The plaintiffs next argue that the commission had no discretion to deny their application because a PDD is a zone like any other, distinguishable only by the fact that the permitted uses and standards of the zone are embodied in the basic development plans, rather than enumerated in the zoning regulations.[6] The plaintiffs reason that the commission must approve the plaintiffs' application for twenty-four condominium units because twenty-four units is a permitted use in PDD #14. (Plaintiffs' Brief, pp. 10-12.)
Previous decisions have treated the PDD as a special permit or site plan.[7] Apple East v. Shelton Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV 0063497 (August 13, 1999, Grogins, J.) and People's Bank v.Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV 0050148 (February 7, 1996,Sylvester, J.) are the only cases this court has found to be on point. Similar to the present action, both of these appeals involved a denial by the Shelton zoning commission of an application to modify a PDD. In order to apply the proper legal standards to a PDD modification application, both of these appeals determined, as a threshold matter, just what type of zoning petition it was. Each appeal concluded that an application to amend or modify a PDD is analogous to a special permit or site plan application. The judges in each of these appeals relied on Judge Fuller's extensive analysis of the PDD "creature" in Mileski v. Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No, CV 0030284 (July 24, 1990, Fuller, J.) InMileski, the court compared a PDD application to a site plan or special permit application but emphasized an inability to identify "exactly what type of zoning approval a PDD is of the statutory authority for it." Id.
"The use of site plans in zoning matters is authorized by General Statutes § 8-3 (g)." TLC Development, Inc. v. Planning ZoningCommission, 215 Conn. 527, 529-30, 577 A.2d 288 (1990). That statute provides in part: "The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. A site plan may be modified or denied only if it tails to comply with requirements already set forth in the zoning regulations." General Statues § 8-3 (g). CT Page 11893
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its) legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . . Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it. . . . If, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner. . . . In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . [O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Emphasis in original; citations omitted; internal quotation marks omitted.) Irwin v.Planning Zoning Commission, 244 Conn. 619, 626-29, 711 A.2d 675
(1998).
As previously noted, the plaintiffs argue that the commission had no discretion but to approve twenty-four condominium units because twenty-four units is a permitted use in PDD #14. The plaintiffs' argument, however, incompletely states the law pertaining to the commission's powers when ruling on a special permit application. Although a zoning commission does not have discretion to deny a special permit when the proposal meets the standards contained in the zoning regulations, it does have discretion to determine whether the proposal CT Page 11894 meets all of the standards set forth in the regulations. Thus, for example, in Apple East v. Shelton Planning Zoning, supra, Superior Court, Docket No. CV 0063797, the court upheld the commission's denial of an application for a modification to a PDD on the basis of traffic concerns despite the fact that the proposed development, a 8,435 square foot retail building, was a permitted use in the PDD. The court explained: "In the present case, the zoning regulations applicable to the PDD clearly state that the Commission may consider traffic consequences in approving a PDD. . . . Similarly, these considerations are also valid in the present case where the Commission is faced with an application to modify PDD #2. The PDD is established as a unit and any integral change should be considered in the context of the whole unit and the applicable regulations to the formation of that unit." Id. Similarly, in People'sBank v. Planning and Zoning Commission, supra, Superior Court, Docket No. CV 0050148, the court recognized that: "In Whisper Wind DevelopmentCorp. v. Planning Zoning Commission, [32 Conn. App. 515, 523,630 A.2d 108 (1993), aff'd., 229 Conn. 176, 640 A.2d 100 (1994]), the Connecticut Appellate Court held that the trial court properly determined that the plaintiff's failure to meet general health, safety and welfare requirements set forth in the zoning regulations of the town provided an adequate basis for the zoning commission's denial of the special permit application, even though the plaintiff's application complied with the detailed technical requirements of the regulations." The court inPeople's Bank v. Planning Zoning Commission ultimately sustained the plaintiff's appeal, however, after finding that the commission's reasons for denying the plaintiffs' application "required the plaintiff to comply with conditions not contained in the regulations." Id.
In its January 16, 2001 decision on the plaintiffs' application, the commission stated several reasons for its decision. The court, therefore, must examine them to determine whether it is (1) pertinent to the considerations which the commission was required to apply under the zoning regulations and (2) whether it is reasonably supported by the record.
The first reason the commission gave was that "[a]t the public hearing several concerns were expressed by neighborhood residents. These included excessive density and intensity of development, population influx, blasting damage, traffic safety, school impacts, lack of dedicated public open space, environmental impacts, etc." (ROR, Item F, p. 1.) Section 34.6 of the town regulations provides, in relevant part, that "[t]he commission may adopt the Planned Development District . . . only after the Commission makes the following findings . . . (f) [t]he streets and drives will be suitable and adequate to accommodate anticipated traffic and projected development intensity will not generate traffic in such CT Page 11895 amounts as to overload the street system in the area. . . ." Section 34.5.2 requires that the basic development plans indicate "the open spaces to be provided." Section 34.5.2f also requires that an applicant's plans indicate "proposed open areas such as parks, lawn areas, and recreational facilities." Section 34.7(c) requires the applicant to submit detailed development plans "presenting in detail the . . . open space proposals contained in the Basic Development Plans." Finally, § 34.8 provides that the commission may only approve a PDD after it makes certain findings, including a finding that the planned development district and the standards and basic development plans applicable therein "will accomplish the purpose set forth in Paragraph 34.1." Section 34.1, in turn, defines the purpose of a PDD as permitting "tracts of land to be developed, redeveloped and improved as harmonious design units of stable character, consistent with the character of the Town and the long range improvement of the neighborhood. . . ." It is this last standard, permitting the commission to consider the "character of the town" and the "long range improvement of the neighborhood" which prompted the court inMileski v. Planning Zoning Commission, supra, Superior Court, Docket No. CV 0030284 to comment: Under section 34 the commission has virtually unlimited discretion on what to allow for a PDD, and it can always fall back on section 34.8 in denying one."[8]
Because Shelton has a specific regulation allowing it to consider general standards such as "lonq range improvement of the neighborhood" and the "character of the town," the commission properly considered density and intensity of development, population influx, blasting damage, traffic safety, and lack of dedicated public open space when it considered the plaintiffs' application. See Whisper Wind DevelopmentCorp. v. Planning Zoning Commission, supra, 32 Conn. App. 523
(holding general health, safety and welfare standards to be adequate basis for denying special permit although application met more technical and specific requirements in regulations.) The issue, now, is whether there is substantial evidence in the record to support the commission's finding that a reduction in the number of units from twenty-four to eighteen would adequately address those concerns.
Several residents who spoke in opposition to the application voiced concerns regarding traffic and population influx/density at the September 26, 2000 hearing. Thomas Miles, a neighboring resident, stated: "[H]ow much land are they building these condominiums on? I heard that it has four acres. On Quail Court, we have six acres. It is very tight up there. I'm also wondering, ah, I live in [a] one-acre zone . . . I thought that was one-acre zone also . . . how can [they] go in and put 24 condos on four acres of land . . . I am also concerned about the volume of people that will be in that area." (ROR, Item K, p. 15.) John Englis, CT Page 11896 another resident, commented: "The issue tonight before us is not the applicant, it is what is happening to the Town of Shelton. . . . Where does it stop? You are inundating us with condominiums. You are saturating us. You are giving us density beyond what we can handle. We can't tolerate any more of this." (Id., p. 24.) Ray Sous, a local attorney, stated; Next, under [§] 34-8 (f), it says that streets and drives will be suitable as to accommodate anticipated traffic and projected development intensity will not generate traffic in such amounts as to overload the streets in a specific area. Now, if you go to the area and you look at the curb coming around that corner, coming up from the City of Shelton . . . you will see that cars come rapidly up that road. In fact, water has gone into the highway at certain times in that area right near the property. I think you have to look at these things. . . ." (Id., p. 17.) Helen Pipa testified: "My most concern is the traffic safety. Route 110 in that area is 45 miles per hour, out the majority of traffic moves in a far greater speed. Making a turn into these condominiums, passing over the other lane will be very tricky at this speed and as this road only consists of two lanes. This area is also notoriously slippery when there is ice and in cold weather. Entering or exiting this complex will be dangerous, not only to the residents . . . out to all passing traffic as well." (Id., pp. 18-19.) Pipa also expressed concern about the population influx: "And along with Waterview Landing, we are talking about 65 new families in an area that was predominantly built for one. Can we handle this population explosion? Can this area handle this divisional population. . . . The area residents have had to work so hard to maintain a certain style of living only to have it gradually erode by rezoning. . . . So I ask you, seeing that this is all we have left of this little area of Shelton, don't let the River Road turn into another Bridgeport Avenue." (Id., p. 19.)
There was also testimony "regarding the application's failure to include dedicated open space. Joseph Migalello, the applicants' consultant for the project, testified that there was no land dedicated to open space. (Id., p. 14.) Ray Sous questioned the lack of open space: "Where is there dedication of open space, recreational egress not dedicated for general public use, I have heard nothing of that. In fact, Commissioner Pagliaro has inquired [of] the applicant what open space, if any, was going to be given and there is none." (Id., p. 17.) Thomas Harkinson, another resident, testified: "But you have taken away someone else's great view of the river. Just the way all the other developments along that ridgeline have done. You have taken a benefit from our community character . . . You have not compensated us with suitable open space or payment in lieu of that. . . . The cuts that you show on your elevation plan are quite substantial. . . . This is in direct opposition to your Coastal Management Plan statement where you state that there will CT Page 11897 be no degradation of visual quality to sufficient alteration from natural beaches and view points." (Id., p. 20.)
The court finds, accordingly, that there is evidence in the record to support the commission's decision to condition its approval of the plaintiffs' application on a reduction in the number of condominium units. The town's regulations clearly permit it to consider traffic and dedicated open space as well as the more general "character of the town" and "long range improvement of the neighborhood" standards when deciding upon an application for a PDD. Moreover, it is well-settled that a planning and zoning commission is entitled to take into consideration whatever knowledge they acquire by personal observation, Burnham v.Planning Zoning Commission, 189 Conn. 261, 267, 455 A.2d 339
(1983). Such personal knowledge and any observations made may be relied on to the same extent as if they were in evidence. Dram Associates v.Planning Zoning Commission, 21 Conn. App. 538, 542, 574 A.2d 1317
(1990). Although the burden of proof is on the plaintiffs to demonstrate that the commission acted improperly, the plaintiffs have not pointed to any evidence in the record supporting their position that the commissions concerns regarding traffic, density, and dedicated open space were unwarranted,
In its decision the commission also stated: "Drawings to date fail to resolve the concerns of the Fire Chief concerning the proximity of the face of the rock cut to the rear wall of both the upper and lower level buildings, obstructing circulation for proper fire safety. . . . The Geometric design of the entry drive poses difficulty for the access/egress of large emergency vehicles. Also, the lack of a suitable turn-around at the end of the drive will make it difficult if not impossible to accommodate the turning of large vehicles, including moving vans and emergency apparatus. . . ." (ROR, Item F, p. 2.)
The plaintiffs argue that the commission violated § 34.6 of the town regulations by using input from the fire chief, obtained after the public hearing, as a basis for reducing the number of condominium units. In a memorandum dated January 11, 2001, John Millo, the fire chief of the city of Shelton, wrote to the commission: "I have reviewed the site plans for the proposed River Ridge Condominium and offer the following comments: (1) Entrance island to be modified to accommodate Fire apparatus. (2) Provide turnarounds for emergency apparatus at ends of access driveways. (3) Upper turnaround island to be modified to accommodate emergency apparatus. (4) Developer shall provide documentation to confirm driveways can support aerial apparatus while operational. (5) Building locations to be modified to provide access to rear of structures for ground laddering." (ROR, Item M-2.) CT Page 11898
"[T]here are a number of cases which have approved the consideration of information by a local administrative agency supplied to it by its own technical or professional experts outside the confines of the administrative hearing." Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 570, 602 A.2d 613 (1992). "The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Id., 573.
The fire chief's memorandum states that his comments are based on a review of the site plans for the proposed development. (ROR, Item M 2.) A review of the record indicates that the site plans were not only part of the record but were discussed at length at the September 26, 2000 hearing. (ROR, Items J and K, pp. ..-14.) The court finds, accordingly, that the challenged material in this instance is based on evidence contained in the administrative record and supported the commission's decision that "a significant reduction in dwelling unit density [would] yield the site space necessary to properly address and resolve" the fire chief's concerns.[9] (ROR, Item F, p. 2.)
 VI CONCLUSION
For the foregoing reasons, the plaintiffs' appeal is dismissed.
CUTSUMPAS, J.